——— KEATING and Others, Plaintiffs, *v.* ——— HAMMERSTEIN and Others, Defendants.

Supreme Court, New York County, April 21, 1921.

Trusts — breach — action by beneficiaries to impress lien on property of corporation owned by decedent — decedent assigned majority of capital stock of amusement corporation to trustee to secure payments under separation agreement to wife and on her death to children for life — voting power and right to receive dividends reserved by decedent, who agreed not to impair value of stock — decedent, after causing corporation, having monopoly of vaudeville performances, to sell said privilege, diverted funds without knowledge of trustee or of children — said diversion was breach of trust — amusement company and children have right of action against decedent's estate and corporation receiving proceeds — beneficiaries not precluded from recovery for breach of trust because corporation has right of action — decedent's estate liable though he was incorporated and property was in corporate name — sale of property of corporation void as against beneficiaries — plaintiffs entitled to lien on tangible property of corporation — recovery limited to sum which decedent agreed upon as redemption price less amount received on sale of stock.

A decedent who assigned a majority of the capital stock of an amusement corporation to a trustee to secure certain payments under a separation agreement to his wife and on her death to his children for life, and agreed not to impair the value of the stock thus assigned, reserving to himself the voting power in said corporation and the right to receive dividends therefrom, was guilty of a breach of said trust agreement, where, after causing the said corporation, over which he had absolute control under the trust agreement, to sell the privilege of conducting vaudeville performances within a zone in the city of New York in which said corporation had a monopoly, he diverted the funds received from the sale of the concession without the knowledge or consent of the trustee or the children. Moreover, the diversion of said proceeds gives a right of action to the amusement corporation, decedent's trustee and to his children against his estate and the corporation receiving the proceeds.

The fact that the amusement corporation, having a monopoly in presenting vaudeville performances, has a cause of action against decedent's estate and the corporation receiving the proceeds of the sale of the concession, does not preclude a recovery for the breach by the beneficiaries under the trust agreement, though their interest is stock in said corporation.

Though the decedent was incorporated and had placed his property in the name of a corporation wholly owned by him, his estate cannot escape liability since the courts must deal with the substance of a transaction as if a corporation were not in existence.

The alleged ante-nuptial transfer and sale by the corporation receiving the proceeds of the concession of its stock and property to the decedent's second wife, was void as against the beneficiaries of the trust where the transfer was made several months after its alleged date, without consideration, and in fraud of the beneficiaries.

By the commencement of this equity action, which is in the nature of a creditor's action to enforce a lien upon corporate property, the plaintiffs acquired a lien upon the tangible property of the corporation receiving the proceeds of the sale of the concession, which property, by the acts of the decedent and his widow, has been placed beyond the reach of an execution.

The measure of plaintiffs' recovery should be limited to the sum said decedent agreed upon as a redemption price, less the amount for which said stock was sold at auction, plus interest.

ACTION in equity in the nature of a creditor's action, in which the plaintiffs seek to impress and enforce a lien upon the property of the defendant Hammerstein Opera Company.

See, also, 196 App. Div. 18.

*Max D. Steuer* and *Jerome A. Strauss*, for the plaintiffs.

*Robert H. Elder*, for the defendants.

SCOTT, Referee:

The facts are somewhat complicated. Oscar Hammerstein, an operatic and theatrical producer, owned and controlled in his lifetime two corporations, one the Hammerstein Opera Company (hereinafter referred to as the Opera Company), and the other the Hammerstein Amusement Company (hereinafter referred to as the Amusement Company). Of both of these companies Hammerstein owned and controlled practically all of the capital stock. He was the president and a director of both, and in effect treated them and their assets as his personal property. His dominion and control over both was complete.

The Amusement Company, on May 3, 1911, and down to the latter part of 1914, owned a leasehold estate in premises on the northwest corner of Forty-second street and Seventh avenue, in the city of New York, upon which was erected a building known as the Victoria Theatre, in which was produced a species of theatrical entertainment known as vaudeville. It also owned a leasehold

estate in certain premises known as the Republic Theatre, in the city of New York. The Opera Company, at least down to September, 1917, owned in fee certain premises in West Thirty-fourth street, known as the Manhattan Opera House.

Oscar Hammerstein had married in 1879 one Malvina Jacoby. They lived as man and wife until in or about January, 1910, when they separated and thereafter lived separate and apart. The above-mentioned Malvina Hammerstein sued her husband for divorce, and pending the trial of her action, and on or about May 3, 1911, the said Oscar and Malvina Hammerstein and the Trust Company of America, as trustee, entered into an agreement, which lies at the base of the plaintiffs' claim in this action.

By this agreement Hammerstein undertook to pay to his wife, Malvina, the sum of $200 per week during her life, and from and after her death to pay to each of the plaintiffs herein, being the children of said marriage, the sum of $100 per week during their respective lives. He further agreed that such payments should constitute a first charge upon his estate, and that the security given should survive his death. To secure these payments, Hammerstein assigned and delivered to the trust company 3,398 (out of 4,000) shares of the capital stock of the Amusement Company, reserving, however, to himself the right to receive the dividends and income from such stock, and the voting power incident thereto, thus retaining the same absolute control of the company which he had formerly enjoyed. Hammerstein, on his part, further agreed that he " would not do or perform any act, or procure any act to be done in his individual capacity, or in his capacity as stockholder or director in the Hammerstein Amusement Company, which shall in any manner impair or lessen the value of said shares of stock, or the value of the lease of said Hammerstein Amusement Company of the premises upon which the Victoria Theatre is located."

A second or supplementary agreement was made on August 11, 1915, between Hammerstein, the Amusement Company and the Equitable Trust Company (which had succeeded the Trust Company of America as trustee). This agreement does not affect any of the terms of the former agreement which bear upon the present controversy, and by the 6th clause thereof Hammerstein ratified, approved and confirmed " the said trust agreement dated May 3, 1911, and all the unexecuted terms, conditions, and stipulations thereof or therein contained," and agreed to keep and perform the same except as otherwise therein provided. It is quite clear to me that this second agreement was not a substitute for, nor a revocation of, the first agreement, but was merely supplementary thereto,

so that for the purposes of this action the two agreements must be read together.

The divorce action of Malvina Hammerstein against her husband had in the meantime proceeded to final judgment in her favor, and soon afterwards she died. Thereafter, and before the execution of the agreement secondly above quoted, Hammerstein sued the trust company to recover back the stock deposited as security. In this action he was unsuccessful, it being finally held that, while Hammerstein might not be liable personally to pay the stipulated weekly sums to his daughters (a point which the court did not decide), yet in so far as the agreement remained unexecuted, it was still valid and enforcible, notwithstanding the death of Malvina Hammerstein. On December 31, 1914, Hammerstein married the defendant Emma Swift Hammerstein, who survived his death on August 1, 1919, and is now the executrix of his will. It is conceded that his estate is insolvent.

Hammerstein, after the death of his wife Malvina, refused to pay to the plaintiffs the sum which he had agreed to pay them, and on June 11, 1919, the Equitable Trust Company, as trustee, sold at public auction the 3,398 shares of the capital stock of the Amusement Company, which was purchased by the present plaintiffs for the sum of $50,432.86, and they are now the owners and holders thereof. The amount thus paid was exhausted in paying the amount due and in arrear to plaintiffs under the agreement of May 3, 1911, with interest, and the expenses of the trustee. The present claim of the plaintiffs arises out of what amounts to a devastavit by Oscar Hammerstein, in violation of his undertaking neither to do, nor to permit or procure to be done, any act which should impair or lessen the value of the shares of stock of the Amusement Company, or the value of the lease of the Victoria Theatre held by that company.

It appears that, at some time prior to April, 1913, Oscar Hammerstein conceived the idea of purchasing a plot of land on Lexington avenue in the city of New York and erecting thereon an opera house. He did purchase the land in the name of the Opera Company, and in its name and behalf commenced the erection of a building. In the year 1913 Hammerstein and the Opera Company were in urgent need of funds to carry forward this enterprise. At that time the Amusement Company enjoyed a practical monopoly of giving vaudeville performances in a certain zone or district in the city of New York under a contract or contracts with a concern known as the United Booking Office of America, which apparently controlled all vaudeville acts and actors, so far as concerned the

city of New York. Under said contract or contracts, no one except the Amusement Company could give vaudeville within the zone or district allotted to the Amusement Company. This monopoly was obviously of great value to that company.

There had been erected within the aforesaid zone or district a place of entertainment known as the Palace Theatre, the owner or owners of which desired the privilege of giving vaudeville performances, whereupon Oscar Hammerstein caused the Amusement Company, over which he possessed and exercised absolute control under the trust agreement of May 3, 1911, to consent that vaudeville performances might be given at the said Palace Theatre, thereby destroying the valuable monopoly which the Amusement Company had theretofore enjoyed. For this concession the owner or owners of the Palace Theatre paid the sum of $250,000, of which at least $200,000 was at once diverted, by the act of Oscar Hammerstein, to the use of the Opera Company, for which the Amusement Company received no benefit or consideration whatsoever. This diversion of the funds of the Amusement Company was effected without the knowledge or consent of the trustee, or of either of the plaintiffs, and undoubtedly constituted a spoliation of the Amusement Company, and an unlawful enrichment of the Opera Company at the expense of the Amusement Company, as well as a distinct breach of trust on the part of Oscar Hammerstein. The inevitable result of this transaction was to depreciate the value of the stock of the Amusement Company then pledged for the benefit of these plaintiffs. There is also evidence that considerable sums of money were diverted to the use of the Opera Company from the box office receipts of the Amusement Company, but the amounts so diverted are not clearly established.

These facts establish, in my opinion, a right of action on the part of the Amusement Company against the estate of Oscar Hammerstein, and also a right of action against the Opera Company. It is very strongly insisted by the defendants that these rights of action belong to the Amusement Company, and that, since the plaintiffs sue in their own individual right, and not in the right of the Amusement Company, their complaint must be dismissed.

With this contention I am unable to agree. As has already been pointed out, the stock was deposited for the benefit of these plaintiffs, and in retaining the control of the company through the voting power of the stock, Hammerstein assumed a relationship of trust and confidence towards the plaintiffs, which imparted to him the character of a trustee for them. His acts resulting in a diversion of the funds of the Amusement Company amounted to a distinct violation of his duty as such trustee, and worked a direct injury to

the *cestuis que* trust by impairing the value of their security. It may be that the Amusement Company might also have sued him and recovered damages, but that would not preclude a recovery by the plaintiffs for the direct injury done to them. (*General Rubber Co.* v. *Benedict*, 215 N. Y. 18.)

If plaintiffs could have pursued Oscar Hammerstein if he had lived, and can now pursue his estate, for the damage resulting to them from his wrongful acts, as I think they could and can, I am further of the opinion that they can pursue the Opera Company to recover the same damages. If they cannot, they can gain nothing from this action, since it is conceded that Hammerstein's estate is hopelessly insolvent.

It is clear that the Opera Company was in fact Oscar Hammerstein, and no one else, for, although a regularly incorporated company, it was merely the medium by means of which Hammerstein carried on a part of his business. It is the modern rule, sustained by ample authority, that an individual cannot escape the liability for his wrongful acts by incorporating himself, and placing his property in the name of a corporation wholly owned by himself. In such a case the courts will not permit themselves to be blinded or deceived by mere forms of law, but, regardless of fiction, will deal with the substance of the transaction involved as if the corporate agency did not exist, and as the justice of the case may require. (*Chicago, Milwaukee & St. Paul R. Co.* v. *Minneapolis, C. & C. Assn.*, 247 U. S. 490, 501.) The same reasons, therefore, which justify the plaintiffs in pursuing Oscar Hammerstein or his estate, equally justify them in pursuing the Opera Company for the same damages for which Hammerstein made himself liable by the transactions above detailed.

A mere judgment, followed by a statutory execution against the Opera House, would be valueless, because of the acts of Oscar Hammerstein and the defendant Emma Swift Hammerstein, which resulted in denuding the Opera Company of its most valuable, if not its only asset.

The defendant Emma Swift Hammerstein claims ownership of the Manhattan Opera House, the only asset of the Opera Company, or at least its only valuable asset, under two documents, one an alleged ante-nuptial transfer to her of all the stock of the Opera Company on December 30, 1914, the eve of her marriage to Oscar Hammerstein; and, second, an alleged sale to her by the Opera Company of the Manhattan Opera House in April, 1919.

I am forced to the conclusion by the evidence in the case that the alleged ante-nuptial transfer of the stock was not made when it purports to have been, but was made some months later, and was

supported by no valuable consideration, and that the sale of the opera house to Mrs. Hammerstein was without consideration, and was made, to her knowledge, in fraud of the plaintiffs and of other creditors of Oscar Hammerstein. It was admitted by Mrs. Hammerstein that she knew all about the trust agreement of May 3, 1911, and that in everything Oscar Hammerstein did after the stock of the Opera Company had been transferred to her he acted as her agent and with her full authority. His knowledge is, therefore, imputable to her. It follows, therefore, that as against these plaintiffs the transfer of the opera house to Mrs. Hammerstein was void, and that plaintiffs are entitled to resort to that property for their satisfaction.

By the commencement of this action, which, as already said, is in the nature of a creditor's action, the plaintiffs acquired a lien upon the tangible property of the Opera Company, which has been by the acts of Oscar Hammerstein and his widow, the present defendant, put beyond the reach of an execution. (*Knower* v. *Central Nat. Bank*, 124 N. Y. 552, 559.)

The next question is as to the amount which the plaintiffs are entitled to recover. By a clause in the agreement of May 3, 1911 (confirmed by the agreement of August 11, 1915), Oscar Hammerstein reserved the right to end all obligation upon his part to make payments to his then wife and to the plaintiffs upon paying to the trustee the sum of $175,000, the income from which was to be paid to Malvina Hammerstein during her life, and upon her death the principal was to be divided between and paid over to these plaintiffs. This was equivalent to fixing the redemption value of the pledged stock at $175,000. There was a further agreement on the part of Hammerstein, as a condition of terminating the trust, that he should pay off a mortgage for $7,000 upon certain property in the county of Kings which he agreed to convey to his wife. It does not appear whether or not this mortgage was ever paid off, but, in any event, the agreement to discharge it was a personal obligation on the part of Hammerstein, in no manner chargeable to the Opera Company.

It certainly will not be unfair to the plaintiffs to limit their right of recovery, as against the Opera Company and its assets, to this stipulated sum, and as it is clear that the Opera Company was enriched by the funds of the Amusement Company to an amount exceeding that sum, no injustice will be done to the Opera Company if that sum be adopted as the basis for computing the amount to be awarded to plaintiffs. It is not possible to compute in dollars and cents just how much the stock of the Amusement Company was depreciated in value by the unlawful diversion of its funds to

the use of the Opera Company, nor is it necessary so to determine for the purposes of this action.

As has been said, the agreement fixed the sum of $175,000 as the redemption price, and that may be deemed to be the agreed value when the trust deed of May 3, 1911, was executed. The stock was sold at auction on June 11, 1919, for the sum of $50,432.86, which fixes its value at that time. This indicates a depreciation of value of the pledged shares to the extent of $124,567.14. No other reason for this depreciation is shown, except the spoliation of the Amusement Company by Oscar Hammerstein in 1914 for the benefit of himself and the Opera Company. To this sum should be added interest from June 11, 1919, up to which date apparently all the arrears due to the plaintiff were paid out of the proceeds of the sale of the stock. The plaintiffs will, therefore, be entitled to recover interest only from the date of the sale.

My conclusion, therefore, is that plaintiffs are entitled to a judgment against the Opera Company for the sum of $124,567.14 with interest from June 11, 1919, and costs, and to a lien upon the Manhattan Opera House property for that amount, subject, of course, to the mortgages already on the property when this action was commenced, and *lis pendens* filed.

Findings of fact and conclusions of law will be settled on notice.