In the Matter of the Judicial Settlement of the Accounts of
ITHACA TRUST COMPANY, as Testamentary Trustee under the
Will of FRANK J. ENZ, Deceased.

ANTON ENZ and Others, Legatees and Remaindermen under the
Will of FRANK J. ENZ, Deceased, Appellants; CARRIE ENZ
ELLIOTT, as Executrix, etc., of MARTHA J. ENZ, Deceased,
Respondent.

Third Department, March 15, 1923.

**Wills — rights of life tenant and remainderman in dividend on corporate
stock — corporation was organized to buy and sell lands and to conduct
farm — primary source of income was from sales of land at increase
over cost — capital investment in stock remained unimpaired at ter-
mination of life tenancy — cash dividends made up in part from sale
of capital assets belong to life tenant — fact that corporation denom-
inated receipts from sales of land as "principal" does not change
rule.**

Where a corporation, which was organized for the purpose primarily of buying
and selling lands, and secondarily to conduct farming operations, contemplated,
in its organization, that the primary source of its income would be the profits
arising from the sale of lands at an increase over the cost, and declared dividends
during the lifetime of the testator, a stockholder, made up principally from that
source of income, and continued to do so during the life tenancy of the person
who was given the life use of certain shares of its stock, and there is no evidence
to show that the corporation does not intend to continue to do so indefinitely,
even though its property is gradually being exhausted, then all the dividends
belong to the life tenant so long as the capital investment of the trust estate
remains unimpaired.

This rule is applicable to the present case, since the capital stock has increased
in value during the life tenancy and the fact that the corporation denominated
receipts from sales of land as "principal" for certain purposes, does not change
the rule.

H. T. KELLOGG, Acting P. J., and VAN KIRK, J., dissent, with opinion.

APPEAL by Anton Enz and others from a decree of the Surrogate's
Court of the county of Tompkins in favor of Carrie Enz Elliott,
as executrix of the will of Martha J. Enz, deceased, widow and life
tenant under the will of Frank J. Enz, deceased, entered in the
office of said Surrogate's Court on the 13th day of January, 1922,
awarding to said executrix certain moneys as income due said life
tenant which had been treated as principal by the trustee and
withheld from her during her life tenancy.

*Harry C. Baldwin* [*Sherman Peer* of counsel], for the appellants,
Anton Enz and others.

*Newman & Newman* [*Charles H. Newman* of counsel], for the
respondent.

HINMAN, J.:

The only clause of the will of Frank J. Enz, deceased, which is pertinent here is as follows: " I will, devise and bequeath to my wife Martha Enz the use and income during the term of her natural life of the rest, residue and remainder of my property, both real and personal."

The controversy here arises out of the disposition of certain cash dividends paid upon certain shares of stock which constituted a part of the residue of the estate of which the widow, Martha J. Enz, was given the life use. Mr. Enz, the testator, died May 27, 1906, leaving a certificate for forty-six shares of the capital stock of the Dwight Farm and Land Company, of the par value of $100 per share, which was appraised in the official inventory of the estate at $250 per share. This stock remained undisposed of in the custody of the executor, acting as testamentary trustee, until the death of Mrs. Enz, which occurred on August 12, 1919. The dividends upon this stock were paid to said trustee during the period of this life estate but only a portion thereof was allotted to and paid over to Mrs. Enz by the trustee, who treated them as partly income and partly principal. The portion treated as principal was that part of the dividends which represented the receipts from sales of lands. This the trustee retained and is the subject of this controversy. The portion treated as income represented the earnings from farming and leasing after deducting all carrying charges including taxes and improvements.

The appellants have taken no exception to the following finding of the surrogate: " The said Dwight Farm and Land Company was incorporated March 10, 1880, under the laws of the State of New York, with a capital stock of $125,000 ' for the purpose of buying, selling, managing and owning lands in the Territory of Dakota and working, cultivating and managing the same and marketing their products.' The primary source of income contemplated was the profits arising from the sale of lands at an increase over their cost. Both before and after the death of Mr. Enz, towns were laid out into lots and farms developed and sales of lots and of acreage were made by the corporation in the ordinary course of its business. An incidental source of income was the profits arising from the renting and operation of the unsold lands."

Exception has been taken by appellants, however, to the surrogate's finding that the capital investment of the Enz estate in this stock remained unimpaired at the termination of the life tenancy notwithstanding the fact that the lands of the company had been largely reduced in acreage by sales during the period of the life tenancy. We think there is ample proof to support

the finding. We agree with the surrogate that the value of the company's assets exceeded its liabilities in a greater amount at the time of the death of Mrs. Enz than at the time of the death of Mr. Enz. The stock was appraised at $250 a share at the time of his death by the appraisers of his estate and the treasurer of the Dwight Farm and Land Company said it was worth $250 at the time of the death of Mrs. Enz and that he had bought some at that figure a few months after her death. At the time of the death of Mr. Enz the lands were carried on the books of the company at about $245,000. The president of the company testified that January 1, 1907, the value of the lands was raised on the books to $300,000 " because we thought the land had increased in value." That figure was not reached by the appointment of appraisers to examine and determine the value of each piece of land but apparently it was the best judgment of the officers of the company. While these lands were being sold, from time to time, the remaining lands were being improved and developed and were more valuable so that at the time of the death of Mrs. Enz there were over 6,000 acres of the best lands left, which both the treasurer of the company and the president of the company testified were worth at that time $100 an acre, which is undisputed, and they were not interested witnesses. They showed further that from January 1, 1907, they had been carrying the lands on their books at $300,000 as a mere matter of convenience in book-keeping. The prices received for lands sold during the life tenancy aggregated $169,575.48, but the best lands of the company had been retained and improved and represented at the close of the period an aggregate value of substantially $600,000, whereas the outstanding liabilities were the unchanged capital stock of $125,000. The capital stock remained unimpaired at the close of the life tenancy and the value of the residuum of the capital assets at that time, notwithstanding the intervening sales of lands, was greater than the value of the capital assets at the beginning of the period. In no sense was the corpus of the trust estate impaired, unless it can be said that the sale of the lands was such a sale of the capital assets as to constitute a gradual liquidation and extinguishment of the capital stock.

While the general rule is that dividends representing the proceeds of sale of capital assets belong to the remainderman, there is an exception to this rule in the case of a corporation which contemplates such dividends as its primary source of income and obtains those proceeds in the ordinary course of its business. Where such a corporation, having so conducted its business and declared dividends during the lifetime of the testator, continues so to do

during the life tenancy, and there is no evidence to show that it does not intend to continue so to do indefinitely, even though its property is gradually being exhausted, then the earnings belong to the life tenant, so long as the capital investment remains unimpaired. That is the rule which has been applied to corporations engaged in buying and selling real estate. (*Matter of James*, 146 N. Y. 78; *Reed* v. *Head*, 6 Allen, 174; *Oliver's Estate*, 136 Penn. St. 43; *Thomson's Estate*, 153 id. 332; *Washington County Hospital Assn.* v. *Hagerstown Trust Co.*, 124 Md. 1; 2 Clark & Marshall Priv. Corp. 1621.)

This exception to the general rule is applicable here. At the time of his death and for many years before, the testator had been a stockholder of this company and had received many large dividends from the sale of lands. About 60,000 acres of lands had been bought at an average price per acre of $2.66, the balance of which, after very extensive improvements and sales, were worth about $300,000 at the time of his death. The capital stock had not been reduced. No charges had been made against principal account by reason of these dividends. They had been paid from " profit and loss " account. The same procedure was continued during the period of the life tenancy, at the close of which the corporation emerges with its capital investment unimpaired and with a residuum of capital assets largely exceeding in value the capital assets as they stood at the beginning of the period.

It is no answer to this to say that it was the practice of the company to denominate receipts from sales of land as " principal " for certain purposes. This classification adopted by the company's treasurer when he sent out the dividend checks or a tax report of the company is not decisive. The right to a dividend as between the life tenant and remainderman of an estate is determined by the facts as to the source and character of the dividend considered in the light of the testator's intention. (*McLouth* v. *Hunt*, 154 N. Y. 179, 197; *Lowry* v. *Farmers' Loan & Trust Co.*, 172 id. 137, 142; *Robertson* v. *de Brulatour*, 188 id. 301, 305; *Matter of Osborne*, 209 id. 450, 458; *United States Trust Co.* v. *Heye*, 224 id. 242, 254.) There is very substantial reason to believe that it was the intention of Mr. Enz that his wife should enjoy the same use and income from this property which he had enjoyed. His wife and adopted daughter were the only persons dependent upon him for support and he had no other heir at law or next of kin residing in this country. The property of which the life use was given consisted of the family dwelling house and about $40,000 in personalty, over one-fourth of which was represented by this stock.

These were ordinary dividends, paid in cash out of current

profits. They were charged to " profit and loss " on the books of the company, and the amount of capital stock remained undiminished. And even though they could be considered extraordinary dividends, they did not " entrench in whole or in part upon the capital of the trust fund as received from the testator," because the resources of the company were greater at the end of the life tenancy than at the beginning. (*Matter of Osborne, supra,* 477.)

The decree of the surrogate should be affirmed, with costs.

KILEY and HASBROUCK, JJ., concur; H. T. KELLOGG, Acting P. J., dissents, with an opinion, in which VAN KIRK, J., concurs.

H. T. KELLOGG, Acting P. J. (dissenting):

The will of Frank J. Enz, a resident of Elmira, N. Y., who died on the 27th day of May, 1906, contained the following clause: " I will, devise and bequeath to my wife Martha Enz the use and income during the term of her natural life of the rest, residue and remainder of my property, both real and personal." It then made disposition of the remainder in such residue in a manner not now important.

The Ithaca Trust Company was appointed executor of the will of the testator, and assumed to act in the capacity of testamentary trustee to carry out the terms of the will in respect to the residuary estate. It so acted until the 12th day of August, 1919, when Martha J. Enz, the life beneficiary, died. One of the assets of the estate received by it was a certificate for forty-six shares of the capital stock of a corporation known as the Dwight Farm and Land Company. This certificate was retained by it for trust purposes throughout the term of the life tenancy. During such period the trustee received from the Dwight Farm and Land Company, in payment of dividends upon the forty-six shares, seventeen separate dividend checks amounting in the aggregate to $10,288.36. Each check received by it was accompanied by a statement from the corporation dividing the amount made payable thereby into payments from corporate income and payments from corporate capital. According to these statements the total amount paid consisted of $4,271.05 paid from income and $6,017.31 paid from capital. Acting upon the information thus given the trustee apportioned the sums so received to trust fund income and trust fund principal. Accordingly it paid out to the life beneficiary as trust fund income the sum of $4,271.05 and retained the balance, or $6,017.31, as trust fund principal to be distributed among remaindermen after the death of the life beneficiary.

In the year 1908 the trustee filed an account in Surrogate's

Court wherein it made statement of the receipt from the Dwight, Farm and Land Company in the year 1907 of a dividend check for $460, its apportionment of the sum of $104.65 thereof to income and $355.35 to principal, and the payment of the former sum to the life beneficiary. Its account was not objected to, and a decree settling the account as rendered was granted.

After the death of the life beneficiary the trustee filed the account now under consideration. It therein reported its payment to the life beneficiary of the sum of $4,271 as income received from the Dwight Farm and Land Company, and its retention of the sum of $6,017.31 received from such company as principal to be distributed to the remaindermen. It was conceded that $355.35 of the latter sum must be treated as principal under the decree previously made. The Surrogate's Court ordered the payment of the balance, or $5,661.96, to the executrix of the estate of Martha J. Enz, the life beneficiary, as income upon the residuary estate of Frank J. Enz, which under the terms of the will of the latter was payable to her.

The Dwight Farm and Land Company was incorporated under the laws of the State of New York in the year 1880, with a capital stock of $125,000 divided into 1,250 shares of the par value of $100. Its expressed corporate purposes were the " buying, selling, locating and owning lands in the Territory of Dakota, and working, cultivating and managing the same and marketing their products." It purchased approximately 60,000 acres of land in that Territory prior to the year 1894. It made no purchases of consequence thereafter. It was continuously thereafter engaged in the farming and leasing of its purchased lands remaining unsold and in the disposition of the extensive crops grown therefrom. It was so engaged throughout the period between the death of the testator and the death of the life beneficiary. Substantial profits were made from the business so conducted during the period, and such profits were the source of the dividends which were paid to the trustee and classed as dividends from income.

The corporation sold approximately 40,000 acres of its land between the years 1894 and 1906, so that at the date of the death of the testator its holdings had been reduced to 11,700 acres. In the year 1919, the year of the death of the life beneficiary, it had further reduced its holdings to 6,653 acres. The price received for the 5,047 acres sold during this period was $169,575.48. There can be little doubt that substantially all of the moneys so received were disposed of in dividends to stockholders, and that they were the source of the payments made to the trustee as dividends from capital. In the first place the retention by the corporation of

the moneys thus received is not reflected in its books. The annual statement of the corporation for January 1, 1907, shows that the resources of the corporation, other than lands sold by it, were then $44,469.75. Its annual statement for January 1, 1920, shows that its resources, other than lands held by it and less notes owed by it, were $76,071.84. A comparison between these statements, therefore, fails to show that the sales moneys received amounting to $169,575.48 were at the death of the life beneficiary still on hand either in the form of cash or in the form of other capital assets. In the second place, the amount distributable to the forty-six shares from such moneys was $6,270.48. The amount actually distributed to such shares, and classed as dividends from capital, was, as stated, $6,071.31. The approximate agreement between these figures indicates that the sum so paid consisted of a distribution of the sales moneys.

The respondent contends that the dividend checks indicate upon their face that they were given in satisfaction of ordinary dividends declared, and that they must, therefore, be presumed to represent dividends from income. The difficulty with this argument is that every dividend check was accompanied by a corporate statement refuting the presumption. If it was a corporate act to declare the dividend and send the check it was a corporate act to make and send the accompanying statement.

The respondent contends that, even though the dividends were declared out of the sales moneys, the capital assets remained as large after the dividend payments as before, and, therefore, the payments did not deplete the corporate capital. The respondent is without proof to support her contention. It is true that the lands held by the corporation were carried upon its books in 1907 at a valuation of three hundred thousand dollars, and that in 1920 they were still carried at the same sum. The proof is undisputed, however, that in making these book figures no genuine valuation was ever attempted to be given. The moneys received from the sales indicate an average price per acre of approximately thirty-three dollars and sixty cents. Extensive sales of corporate lands were made as early as the year 1908 at an average price of thirty dollars per acre. There is no evidence as to sales or values in the years 1906 and 1907 and, therefore, no evidence that the lands were not worth at the beginning of the trust period the sum of thirty-three dollars and sixty cents per acre, or the average sum received upon sales afterwards made.

Even assuming, however, that the entire sum of $169,575.48 received upon sales represents no more than a natural appreciation of capital assets between the years 1906 and 1919, nevertheless

the life beneficiary would not have been entitled to share in this sum. " Where a trust estate holds corporate stock on which it has received bonds and scrip in the nature of a dividend representing in part earnings and in part an increase in the value of the investments of the company, the life tenant is entitled only to such portion of the bonds as represent earnings. The portion representing increased value of the corporate securities is a distribution of capital and belongs to the remainderman." (*Thayer* v. *Burr,* 201 N. Y. 155.) I think the proof clearly discloses that the dividend payments reserved by the trustee were made out of capital assets and conclude, therefore, that the life beneficiary was not entitled to have such sums distributed to her. (*Matter of Osborne,* 209 N. Y. 450.)

VAN KIRK, J., concurs.

Decree affirmed, with costs to the respondent Carrie Enz Elliott, as executrix, etc., payable out of the estate of Frank J. Enz, deceased.