In the Matter of the Estate of WOODBURY G. LANGDON, Deceased.

Surrogate's Court, New York County, January 10, 1931.

380

*Lord, Day & Lord,* for the executors and trustees.

*Emmet, Marvin & Martin,* for the beneficiaries.

*Samuel I. Rosenman,* special guardian.

FOLEY, S. The executors and trustees have accounted and have requested this court to direct the proper allocation of two dividends received by them as trustees. The facts are not disputed.

Woodbury G. Langdon during his lifetime was engaged in the purchase and sale of realty. To facilitate his realty operations he conveyed in 1913 to The Woodbury G. Langdon Co., Inc., real estate of the net value of $1,800,000 in exchange for which there was issued to him the entire stock of The Woodbury G. Langdon Co., Inc., comprising 18,000 shares of the par value of $100. He died on the 20th day of April, 1919. In the course of administration of his estate the trustees divided these 18,000 shares equally

among six trusts created under his will. These trusts were created for the lives of his six children and for his widow. The corporation formed by the decedent was engaged in the business of buying, selling, holding and managing real estate. The principal purpose clause of the certificate of incorporation of the company reads as follows: " To acquire by purchase or lease, or otherwise, lands and interests in lands and to own, hold, improve, develop and manage any real estate so acquired and to erect or cause to be erected on any lands owned, held or occupied by the corporation, buildings or other structures with their appurtenances, and to rebuild, enlarge, alter or improve any buildings or other structures now or hereafter erected on any lands so owned, held or occupied, and to mortgage, sell, lease or otherwise dispose of any lands or interests in lands and in buildings or other structures, and any stores, shops, suites, rooms or parts of any buildings or other structures at any time owned or held by the corporation." During his lifetime the decedent was inactive in the purchase and sale of real estate through the corporation. What transactions occurred resulted, up to the time of his death, in losses to the corporation of approximately $38,000. Real estate conditions during that period undoubtedly account for the inactivity of the corporation in the business for which it was formed. He did, however, take as dividends the net rents of the properties held by the corporation.

After the death of testator on April 20, 1919, the business of the corporation was continued by the present directors, William M. Cruikshank, one of the accounting executors and trustees, J. Louis Van Zelm, an officer of the Bank of New York and Trust Company, the accounting corporate executor and trustee, and Sophie E. Tyler, the life beneficiary of one of the trusts created under the will of the testator. During the following years conditions in the realty market changed for the better. The trustees received from the corporation as dividends the net rents of the properties held by the corporation. These payments they treated as income, and paid them over to the life beneficiaries of the respective trusts. This practice has not been questioned. Large profits, however, were made by the corporation on the sale of different parcels since the death of the testator. Some of these parcels were turned over to the corporation in 1913 by the testator, others were acquired by the corporation between 1913 and the death of the testator in 1919, and others were acquired by the corporation after testator's death. Up to the date of this accounting these profits amounted to approximately $435,000. On October 29, 1929, the corporation declared two extra cash dividends of $5,400 each, which have been received by the trustees, and are included in their accounts. As

to the first dividend, the resolution of the board of directors expressly stated that such dividend was declared out of the surplus derived from profits on the sale of real estate received by the corporation from the testator as consideration for the stock of the company. This resolution reads as follows: " *Resolved,* that a dividend of Thirty (30¢) Cents per share is hereby declared on the capital stock of the company out of the $148,344.33 of surplus derived from profits on the sale of real estate received by the corporation from Mr. Woodbury G. Langdon as consideration for the stock of the company issued to Mr. Langdon, such dividend to be payable October 30th, 1929, to stockholders of record of the company at the close of business on October 28th, 1929."

As to the second dividend, the resolution of the board of directors stated that it was declared out of the surplus derived from profits on the sale of real property other than that originally received by the corporation from the testator. That resolution is as follows: " *Resolved,* that a dividend of Thirty (30¢) Cents per share is hereby declared on the capital stock of the company out of the $115,579.06 of surplus derived from profits on the sale of real estate purchased by the company subsequent to its incorporation, such dividend to be payable October 30th, 1929, to stockholders of record of the company at the close of business on October 28th, 1929."

These two dividends were the only extra dividends declared out of profits realized in the realty operations of the corporation. The trustees have credited these two dividends to the capital of the several trusts and now ask this court to determine whether that allocation was proper or whether these dividends should be paid as income to the life beneficiaries.

The special guardian urges that the corporate entity should be pierced and this matter treated as though the testator devised the real property held by the corporation to the trustees directly. I am of the opinion that the corporate entity should not be disregarded. While the trustees own all the stock of the corporation they are not the sole members of the board of directors thereof. They receive the funds paid to them by the corporation as representatives of six different trusts created under the will. On occasion, the corporate entity will be disregarded to correct fraud or to do equity. ( *Keating* v. *Hammerstein,* 125 Misc. 334; *Quaid* v. *Ratkowsky,* 183 App. Div. 428; affd., 224 N. Y. 624; *Matter of Friedman,* 177 App. Div. 755; *Farmers' Loan & Trust Co.* v. *Pierson,* 130 Misc. 110.) No fraud is alleged here, nor is it necessary to disregard the corporate entity to do equity in this matter. The testator bequeathed the shares of stock in trust and his bequest of the realty in that form cannot be disregarded. It is clear that in

forming the corporation he also had in mind the advantages of such a method in the settlement of his estate and the ease of division between the various trusts and the avoidance of the expense of a partition action. Moreover, the purposes of the corporation as set forth in its charter contemplate the purchase and sale of its holdings as part of its usual business dealings.

To avoid protracted hearings there has been filed with this accounting, affidavits of William M. Cruikshank, one of the accounting trustees, who has been on the board of directors since the organization of the company in 1913, which give the financial situation of the corporation at different times. A supporting affidavit is filed by the secretary of the Langdon Corporation. At the time of the death of the decedent in 1919 the net value of the corporate assets was $1,968,760.33. On December 31, 1929, after the deduction of the two dividends in question here which were declared on October 29, 1929, the net value of the company assets was $2,977,978.96. The increase in the value of all the assets of the corporation between the date of the death of testator and this accounting is $1,009,218.63, and of this increase $435,538.96 represent net profits on sale of real property actually realized during that period after writing off all losses. The balance represents the increased value of real estate retained by the corporation.

From the foregoing facts it seems clear that the profits, out of which the two dividends in question here were declared, were made by the corporation in the ordinary course of business carried on by it since the death of the testator, under the authority of its charter. The integrity of the trust fund must be preserved. Its value as of the date of death must be maintained. (*Matter of Osborne*, 209 N. Y. 450, 477.) In so far as it applies to realty trading corporations, *Matter of Enz* (204 App. Div. 634; affd., 237 N. Y. 577) is controlling here. There the profit from the sale of lands after death was held to be income payable to the life tenants. The fair way to ascertain the profit earned after the inception of the trust is to determine that portion of the sale price which represents the increase in its valuation since the death of the testator. The gross profit may be more, but that which is attributable to the increase in value during his lifetime must be construed to have been earned prior to the creation of the trust. It cannot be said that because the sale was made after the death of the decedent, the entire increase in valuation is profit earned after he died. There may have been a great increase in value before the death of the testator, which it would be improper to include in the profit made upon a sale after his death. If these dividends were declared out of surplus earnings acquired entirely after the inception of the trust and if they did not

encroach on the value of the corpus of the trust funds, they would be properly payable to the life beneficiaries. (*Pratt* v. *Ladd*, 253 N. Y. 213; *Equitable Trust Co.* v. *Prentice*, 250 id. 1; *Bourne* v. *Bourne*, 240 id. 172; *Matter of Osborne*, 209 id. 450; *Matter of Enz*, 204 App. Div. 634; affd., 237 N. Y. 577.) But in this case the situation is different. The corpus of the trust fund has not been impaired, but the surplus out of which the first dividend was declared was earned partly before and partly after the death of decedent. An examination of the affidavits filed disclosed that property valued at $994,208.30 when originally transferred to the corporation was worth at the date of testator's death $1,196,000, and was sold thereafter for $1,311,064.20. The gross profit was, therefore, $316,855.90, of which $115,064.20 was earned after the death of testator, and $201,791.70 earned before. The life beneficiaries, therefore, are entitled to 115,064.20/316,855.90ths of $5,400 or $1,960.98, and the principal of the trust to 201,791.70/316,855.90ths of $5,400 or $3,439.02.

The second dividend of $5,400 was declared out of the profits realized on the sale of property acquired after the incorporation of the company and sold after the death of testator, as well as upon the sale of property acquired after his death and sold thereafter. The affidavits disclose that as to the property acquired by the corporation between 1913 and 1919 it was of the value of $100,389.34. These properties at the date of his death were valued at $84,280. They sold after his death for $122,919. The profit of $21,529.66 is, therefore, properly income. The properties acquired after testator's death and sold thereafter show a profit of $96,153.40. It appears clearly that as to the properties acquired after the formation of the corporation, and those acquired after the death of the testator, the profits earned upon the sale thereof were all earned after the inception of the trust. The second dividend of $5,400 is, therefore, properly payable to the life beneficiaries.

The decision of the surrogate in this matter is confined to the distribution of the two small extra dividends declared on the stock held by the trustees out of the large surplus held by the corporation. Subsequent distributions of extra dividends declared will have to be determined in future accounting proceedings. Tax costs. Submit decree on notice settling the account accordingly.