In the Matter of the Estáte of FREDERICK SCHAEFER, Deceased.

Surrogate's Court, New York County, April 11, 1935.

*Wingate & Cullen* [*Conrad Saxe Keyes* of counsel], for the substituted trustee.

*A. S. & W. Hutchins* [*Augustus S. Hutchins* and *H. Randolph Anderson* of counsel], for Albert Schaefer, life beneficiary.

*Fitch, Grant & Clark* [*Littleton Fox* of counsel], for Elsa S. Mohr and others.

*Forster, Hotaling & Klenke* [*George P. Hotaling* of counsel], for George E. Chatillon, executor, etc., of Edward C. Schaefer, deceased.

*Alger, Peck & Grafton* [*George W. Alger* and *Edward S. Frith* of counsel], for Rose K. Schertel von Burtenbach and others, remaindermen, and Guaranty Trust Company of New York, substituted trustee, etc., under the will of Frederick Schaefer, deceased.

*Hardy, Stancliffe & Hardy* [*George T. Barker* of counsel], for Alfred J. Chatillon and others, remaindermen.

*Carl Sherman*, special guardian.

FOLEY, S. This is a motion to confirm the referee's report. The basic issue before the referee was the proper allocation between principal and income of the liquidating dividend of a corporation, 200 shares of which formed part of the trust accounted for.

The corporation was formed in 1893 by the testator and his brother. Twenty-five hundred shares, par value $100, were issued by the corporation. All but twenty of these shares were issued to the two brothers in exchange for eight parcels of improved realty theretofore owned by them. The certificate of incorporation recited that " The object for which it is formed is the purchase and improvement of real estate and the leasing and selling of real estate, and the acquisition by purchase or lease of real estate for investment purposes, and the erection of buildings thereon, and the letting of such real estate, or any part thereof, to secure an income to the corporation."

Between 1893 and the testator's death in 1897 the corporation acquired six more parcels of improved realty. The testator owned 1,000 shares of the capital stock of the corporation at the date of his death. Two hundred of these shares were allocated to this trust.

Subsequent to the testator's death in 1897, the corporation purchased eight additional parcels of realty from earnings. Only two of these parcels, having a relatively small value, were unimproved.

From 1895 until 1930 dividends of from five dollars to sixty-two dollars a share per annum were paid by the corporation. These dividends received by the trustee were paid to the life tenant as income.

In the fall of 1925 the stockholders of the corporation voted to dissolve and thereafter the liquidation of the corporation followed.

The sum of $395,000 has been paid to the trustee by the corporation as a liquidating dividend. The allocation of this sum between the principal and income of the trust is the source of the litigation.

The fourteen parcels of realty which were owned by the corporation on the death of the testator were never sold until the liquidation in 1925. Relying on the familiar rule that gain by

increment in capital value is principal, the referee has correctly held that 200/2500ths of the net proceeds of the sale of these parcels constitutes principal of the trust. (*Matter of Hagen*, 262 N. Y. 301; *Pratt* v. *Ladd*, 253 id. 213; *Equitable Trust Co.* v. *Prentice*, 250 id. 1; *United States Trust Co.* v. *Heye*, 224 id. 242; *Matter of Osborne*, 209 id. 450; *Thayer* v. *Burr*, 201 id. 155.) The fraction employed by the referee represents the ratio between the shares of stock held by the trustee and the outstanding shares of the corporation. All other sums received from the corporation as liquidating dividends have been correctly allocated to the income of the trust by the referee.

It was contended on behalf of the life tenant that the profit on the sale of the original fourteen parcels should be considered as earnings of the corporation and consequently income of the trust. That is, that 2/25ths of the value of these parcels in 1897 should be deducted from the liquidating dividend and considered as principal and that the balance of the liquidating dividend should be treated as income. This argument is an attempt to bring this case within the exception to the general rule that profits from the sale of capital assets belong to the remaindermen as principal. This exception to the general rule was applied in *Matter of Jackson* (258 N. Y. 281); *Matter of Enz* (204 App. Div. 634; affd., 237 N. Y. 577), and *Matter of Langdon* (139 Misc. 379). Briefly stated, the exception to the general rule applies where the primary source of income to the corporation is profit from the sale of its capital assets.

In *Matter of Jackson* (*supra*) the corporation held title to a large parcel of unproductive real property. It was, therefore, apparent that the only source of income to the corporation was profit from the sale of the unproductive realty. The exception to the rule was, therefore, applied.

In *Matter of Enz* (*supra*) the corporation was engaged in buying and selling farm lands and marketing the produce of such lands. In the ordinary course of its business the corporation laid out towns and lots and developed farms which were sold at a profit. It was held that the profit from the sale of the farm lands was the primary source of income to the corporation and that the dividend declared from such profit was income.

In *Matter of Langdon* (*supra*) the testator had been engaged in buying and selling real estate. To facilitate his operations he transferred his holdings to a corporation which continued to buy and sell realty both before and after his death. The corporation was essentially a real estate trading company which made profits from the sale of realty in the ordinary course of business. When

a dividend was declared out of such profits it was accordingly held that the dividend was payable to the life tenants of the trusts created by the testator.

The facts of the present case are in no way similar to those in which the exception to the general rule was applied. The primary source of income to the Schaefer Company was rent from improved real property on Manhattan island. Practically all of the realty owned by the corporation was improved and yielded a substantial income. That the company was an investment rather than a trading corporation is evidenced by the certificate of incorporation which recited that real property is to be acquired " for investment purposes " and is to be leased " to secure an income to the corporation." The testator himself treated the company as an investment corporation, for during the four years in which he participated in its management no real property was sold. In fact from the date of its incorporation in 1893 no real property was sold by the corporation until twenty-six years later, in 1919. It is most significant that the fourteen parcels of realty owned by the corporation on the testator's death were never sold in the ordinary course of business, but only on the liquidation of the corporation. During the existence of the corporation, its gross earnings from rentals were in excess of $4,000,000. During the administration of the trust the life tenant has received substantial amounts of income from the dividends declared from year to year by the corporation out of rentals. It cannot, therefore, be argued successfully that the primary source of income to the corporation was profit from the sale of realty or that the corporation made a profit from the sale of realty in the ordinary course of its business. The facts of the present case are clearly distinguishable from those upon which the decisions in *Matter of Jackson*, *Matter of Enz* and *Matter of Langdon* are based.

The learned referee has, therefore, correctly applied the general rule and not the exception thereto. His report is confirmed and the exceptions thereto are overruled. All questions involving the fixation of additional counsel fees, costs and expenses and the apportionment thereof between principal and income will be determined on the settlement of the decree. In accordance with the referee's report the trustee is directed to file a supplemental account within twenty days. As the life tenant has died since this motion was returnable, the representative of his estate should be made a party to this proceeding and should receive notice of the filing of the supplemental account.

Proceed accordingly.