Morton B. Silberman, S.
This construction proceeding is brought by the five trustees under the last will and testament of the above-named decedent, who died a resident of Texas on May 27, 1963. The will is dated June, 1962, and was probated in Rockland County on September 11, 1963. The trustees constitute decedent’s entire immediate family, namely Ms widow and four children. The youngest of the children, John Underhill Tonetti, was 19 when the will was drawn but was nevertheless included in the will as a trustee. He arrived at full age after the testator’s death, and letters of trusteeship were issued to him on December 23, 1963, having been granted to the other trustees on the date of probate.
The bulk of decedent’s estate, and the entire trust corpus, consists of New York real property. Therefore the construction of the trust provisions of his will is governed by New York law. (Decker v. Vreeland, 220 N. Y. 326; Bishop v. Bishop, 257 N. Y. 40.)
Paragraphs “second”, “third” and “sixth” of the will read as follows:
“ second : I give and bequeath .to my wife Susan IT. Tonetti all of my clotMng, jewelry, automobiles and similar chattels, together with any and all cash, securities and insurance which I may own at the time of my death.
“ third; I give, devise and bequeath all the rest, residue and remainder of my property, including any and all real estate *503 which I may own situate outside the State of Texas, to my trustees hereinafter named, for the following uses and purposes: “ (a) To pay or apply the net income therefrom to or for the use of my said wife Susan H. Tonetti so long as she shall live.
“ (b) Upon the death of my said wife to transfer, pay over and distribute one-half (%) of th,e principal of such trust fund as she, my said wife, may by will appoint.
“(c) Upon the death of my said wife, or upon my death in ease she shall predecease me or in the event that we shall die in or as the result of a common disaster, I direct that the entire remainder of such trust fund, or the entire trust fund in case my wife shall not appoint any part thereof, shall be apportioned and divided to and among my children then surviving, in equal shares, but the descendants then living of any deceased child of mine shall take their parent’s share by representation.
“ sixth : I authorize and empower my trustees to use principal in so far as this may be necessary or advisable for the support and maintenance of my said wife or for the support, education, and maintenance of my children, or any of them. ’ ’
The intervening paragraphs “ fourth ” and “ fifth ” deal with the appointment of the executors and the trustees, and a power of sale, respectively.
The ultimate question to be determined in this proceeding is whether the trustees, who are testator’s widow and their four children, are empowered under paragraph “ sixth ” to invade for a child or children of the deceased the portion of the residuary estate over which the widow was given in paragraph “ third ” a power of appointment. Whether the trustees are so empowered will of course affect the administration of the trust. It will also have a broad impact on the estate taxes in this estate by reason of its effect on the marital deduction. If this portion is subject to such power it will not qualify for the marital deduction, by reason of section 2056 (subd. [b], par. [5]) of title 26 of the United States Code and sections 955 and 960 of the New York Tax Law. As hereinafter stated, such portion is approximately $134,000.
In construing a will the basic factor in the search for its meaning is the intent of the testator. In Matter of Fabbri (2 N Y 2d 236, 239-240), the Court of Appeals speaking through Judge Burke said:
“ The prime consideration here as in all construction proceedings is the intention of the testator as expressed in the will. All rules of interpretation are subordinated to the requirement that the actual purpose of the testator be sought and *504 effectuated as far as is consonant with principles of law and public policy.
1 ‘ This intent, as we have often said, must be gleaned not from a single word or phrase but from a sympathetic reading of the will as an entirety and in view of all the facts and circumstances under which the provisions of the will were framed. (Collister v. Fassitt, 163 N. Y. 281; Robinson v. Martin, 200 N. Y. 159,164; Williams v. Jones, 166 N. Y. 522, 533; March v. March, 186 N. Y. 99,103.) ”
After adverting to Judge Learned Hand’s admonition to beware of making “a fortress out of the dictionary ”, since there “is no more likely way to misapprehend the meaning of language * * * than to read the words literally, forgetting the object which the document as a whole ” seeks to achieve, the court continued: “If the court upon reading the will in this setting discerns a dominant purpose or plan of distribution, the individual parts of the will must be read in relation to that purpose and given effect accordingly (Roe v. Vingut, 117 N. Y. 204, 212). This is true despite the fact that a literal reading of the portion under construction might yield an inconsistent or contradictory meaning because of the use of awkward language inadvertently or carelessly chosen (Haug v. Schumacher, 166 N. Y. 506, 513; Williams v. Jones, 166 N. Y. 522, 533, supra). As this court pointed out in an early opinion: ‘ If we can see that the inapt, or careless, use- of language by the testator has created the difficulty in ascertaining his intention, but, nevertheless, feel certain as to what he meant, from reading the whole instrument in connection with the clause in question, we may subordinate the language to that meaning. ’ (Matter of Miner, 146 N. Y. 121,130-131.) ”
In the Fabbri case the will directed that upon a certain event a trust fund “ shall be distributed to and among such issue of Teresa Clark, daughter of the said Edith 8. Fabbri, as I may designate in writing. ’ ’ The testator failed to make such designation. Nevertheless the court held that the gift to the class was unconditional — the designation related only to the apportionment among them. The court held further that the gifts did not fail because of uncertainty of the respective amounts, and that ■this holding was not redrafting the will. ‘ ‘ The issue take the remainder in equal shares, not because we so determine, but by virtue of the absence of an apportionment on the part of the testator.” (p. 242.) (See, also, Matter of Larkin, 9 N Y 2d 88, 91; Matter of Thall, 18 N Y 2d 186, 192.)
It is abundantly evident that subdivision (b) of paragraph “ third ” is estate tax oriented. Testator’s children were adult *505 with the exception of one who was nearly so and who was named as a trustee with the rest of the family. Testator’s primary testamentary concerns were to provide for his wife during her life and to obtain a marital deduction for estate tax purposes. The adjusted gross estate here is about $300,000 and the corpus of the trust is about $268,000. The entire income goes to the widow during her life. Half of the corpus the testator placed beyond the reach of his wife (except for the income). Even if paragraph “sixth” is interpreted with slavish literalness the widow could not invade any of that half for herself without the concurrence of her children. Besides being only one person in five, she would be disqualified under former section 141, now 159, of the Beal Property Law, from participating in the decision. The fact that the testator did not leave this portion to her or extend the general power of appointment to it does not indicate any lack of concern for his wife. It may well be that he was trying to keep future taxes down in her estate. Be that as it may, it is unthinkable that he meant to give his children the power to invade, and even to destroy, for the benefit of anyone other than the widow, her portion of the trust. He had provided about $134,000 for them with the power to invade and with ultimate succession to that fund. To say that each “side” has the power to invade the other’s fund would be giving the wife an illusory power indeed, for the reasons above stated. She would be at the mercy of her children, and while there is no indication that testator did not trust his children it cannot be assumed that he wanted to place his wife in that situation.
Testamentary provisions in favor of a surviving spouse are liberally construed in her favor. (Matter of Moss, 230 App. Div. 741; Matter of Cram, 204 Misc. 910, 913; Matter of Joseph, 12 Misc 2d 1076,1080; Matter of Scheubel, 43 Misc 2d 674, 675.) This principle should be borne in mind when evaluating the authorities in this matter, many of which are eases involving a right of election. In the election cases the interest of the surviving spouse lies in upholding the right to invade her trust, whereas in the instant case the situation is exactly the reverse. Those of the election cases which might seem at first blush to militate against the view herein adopted, like Matter of Murray (27 Misc 2d 115, mod. 18 A D 2d 795, affd. 14 N Y 2d 674) must be appraised against this background.
It is readily apparent that testator in subdivision (b) of paragraph “ third ” was trying to secure the maximal possible marital deduction. It cannot be presumed that he would intentionally perform the useless and futile act of setting it all up *506 only to cancel it out with an unnecessary and undesirable power to “ cross-invade ”. His obvious intent, and attempt, to get this deduction must be given great weight in interpreting the invasion clause. In Matter of Liberman (4 A D 2d 512, 515, affd. 5 N Y 2d 719) cited infra, the court said: “ Testator was chargeable with the knowledge that in the eye of the law an illusory trust is no adequate substitute for the petitioner’s right of dower or election, and he must therefore be presumed to have intended her trust to be free during her life from invasion for the benefit of the children.”
Similarly, here the testator is chargeable with the knowledge that an illusory trust will not satisfy the requirements for the marital deduction. In Matter of Roland (40 Misc 2d 1018, 1021) the widow complained ‘ ‘ that the ‘ peculiar powers ’ given by the will to the executors and trustee” were “ potentially destructive of the trust corpus ” and made her trust illusory. The court said (p. 1022):
“ These provisions could conceivably create issues between specific legatees and residuary legatees, but they pose no threat to the widow’s legacy.
“ The testator’s will indicates very clearly his intention to set aside for his wife’s benefit the amount required by section 18 * * * what he meant was that his purpose was to give her enough so that no election could be effectively exercised by her. Hence he intended that this minimum amount could not be subject to invasion or diminution for the benefit of any other legatee or beneficiary.”
Similarly, here the testator wanted to give his wife whatever was necessary to get the most marital deduction, and no less. We might even read into the will an implied condition that “ this power of invasion shall not be so construed as to affect adversely the marital deduction in my estate ”,
In Matter of Thall (57 N. Y. S. 2d 698, 701) which preceded by over two decades the later phase of the same estate cited above, Surrogate Gtriftiths said: ‘ ‘ Since the unqualified right to receive one-half of the total net income produced by a given sum is equivalent to the right to receive the entire net income from one-half of a like sum, the court may regard the provisions of the will as dividing the residuary estate into two equal parts with the entire net income of one of such parts payable to the widow of testator. Matter of Mayers, 184 Misc. 413, 51 N. Y. S. 2d 471; Matter of Bevan’s Estate, 185 Misc. 192, 57 N. Y. S. 2d 693; Matter of Sternberg [N. Y. L. J., June 16, 1938, p. 2912, col. 3].” This court construes the instant will to establish two separate trusts of the residuary estate, or what amounts sub *507 stantially to the same thing, one trust divided into two primary shares. The portion of the trust over which the widow does not have a poAver of appointment is deemed to be further divided into four subshares, one for each child. So interpreted, the will does not permit “ cross-invasions ”. And, so interpreted, it is but a short step under the authorities to hold, as this court does, that any invasion of a share or subshare can be charged against only that person’s share or subshare in whose favor or for whose benefit the invasion is made. (Matter of Liberman, 4 A D 2d 512, affd. 5 N Y 2d 719, supra; Matter of Sernau [dictum], 36 Misc 2d 348.)
Inasmuch as the will does not provide otherwise, estate taxes must be apportioned in accordance Avith section 124 of the Decedent Estate Law.