Samuel J. Silverman, S.
This is a petition by the executors for a determination of the validity of the purported exercise by decedent’s widow of a claimed right of election to take against decedent’s will under EPTL 5-1.1.
The will was executed in 1959. Decedent died in November, 1967.
After preresiduary gifts of $6,000 to decedent’s sister and secretary, the will bequeaths one third of the rest, residue and remainder in trust to pay the income of the trust (after administration expenses and taxes properly payable by the trustees therefrom) to decedent’s widow during her life and upon her death to convey the principal, together with all accrued income and profits, to decedent’s children, then living. In the event that the net income of the trust should at any time be less than $200 per month, then decedent directed the trustees to pay his wife out of corpus, the difference between $200 and the net income for said month.
I. LIMITED RIGHT OF ELECTION
Clearly, the widow has at least a limited right of election pursuant to EPTL 5-1.1 (subd. [a], par. [1], subpar. [F]).
By reason of the preresiduary gifts, ‘ ‘ the aggregate of the provisions in the will for the surviving spouse, including the principal of a trust * * *' is less than the elective share ” i.e., less than one third of the net estate. Therefore, “ the surviving spouse has the limited right to elect to take the difference between such aggregate and the amount of the elective share”. (EPTL 5-1.1, subd. [a], par. [1], subpar. [F].)
Furthermore, as the will leaves nothing outright to the widow, the widow has the right to take $2,500 under the remaining provisions of EPTL 5-1.1 (subd. [a], par. [1], subpar. [F]). ‘ ‘ In every estate, the surviving spouse has the limited right to withdraw the sum of twenty-five hundred dollars if the elective share is equal to or greater than that amount. * * *
Where a trust is created for the life of the surviving spouse, such sum of twenty-five hundred dollars * * * is payable from the principal of such trust.”
*950 II. EIGHT OF ELECTION TO TAKE ENTIRE ELECTIVE SHARE ABSOLUTELY
The more difficult problem is whether the widow has a right to take her elective share — one third of the principal of the net estate — outright and not subject to trust. This in turn depends upon the question whether the trust in this case qualifies as the kind of trust, such that the amount of the principal thereof may be counted toward the provision for the widow’s benefit within the meaning of EPTL 5-1.1 (subd. [a], par. [1]) for the purpose of determining whether the widow has a right of election beyond the limited right given by subparagraph (F).
The problem here is whether this is a trust with the income payable to the widow for life. The widow argues that the will does not give her the income of the trust for life because:
(a) ' ¡Stock dividends are directed by the will to be considered principal, whereas the widow relying on EPTL 11-2.1 (subd. [e], par. [2]) says that any such distribution of 6% or less is income as a matter of law.
(b) The will directs that dividends payable in securities of another company, extraordinary dividends, liquidating dividends, rights to subscribe to new stock and stock received pursuant to such right shall be considered two thirds principal and one third income. Under the Principal and Income Act (EPTL 11-2.1, subd. [e]) distributions of securities of another company or extraordinary cash dividends are deemed wholly income. (EPTL 11-2.1, subd. [e], par. [9].) (Rights to subscribe, and liquidating dividends are treated as wholly principal under the act; EPTL 11-2.1, subd. [e], pars. [4] and [6].)
(c) The will gives the trustees the power to determine the manner in which administration expenses shall be apportioned as between corpus and income.
The executors say that by reason of the small size of this trust — about $50,000 — it is unlikely that it would ever be invested in corporate stocks, so that the problems of treatment of various corporate distributions under (a) and (b) above are never going to arise.
1. The statute gives both a decedent and his surviving spouse certain substantial rights. To the decedent, it gives the right to arrange his estate so as to devote one third of his estate to the support of the surviving spouse, of which $2,500 shall be in cash and the balance may be held in trust to pay the income to the surviving spouse for life. To the surviving spouse, the statute gives the right in certain circumstances to receive one third of the estate outright or in trust.
Neither of these provisions should be defeated by technical interpretations or traps.
*951 This is perhaps the teaching of the much cited case of Matter of Baileson (16 N Y 2d 757 [1965]) where the Court of Appeals held that a stipulation against apportionment of accrued income, so that all accrued income at the time of the widow-life tenant’s death would belong to corpus, did not deprive the widow of the benefit of the income from a trust for life so as to entitle her to a right of election. Although the Court of Appeals gave no reason for its decision, it cited Matter of Byrnes (260 N. Y. 465, 473-474). In the Byrnes case at t*he page cited, the court said: “ We think that when the Legislature referred to trusts which should be regarded as the equivalents of the intestate share of the surviving spouse, as trusts ‘ for his or her benefit for life, ’ or as trusts ‘ with the income thereof payable to the surviving spouse for life, ’ it intended thereby to use these words, not in a technical sense, but in the sense with which common usage would ordinarily invest them.”
Belying on the Baileson case, the Appellate Division for this Department has recently said: ‘ ‘ Minor deviations from the right of election statutes or minimal invasions of the trust income do not give the surviving spouse an absolute right of election contrary to the intention of the decedent spouse.’1’ (Matter of Brettschneider, 30 A D 2d 59, 60 [1st Dept., 1968].)
2. I think the present will does provide for a trust with income payable to the surviving spouse for life, using those terms ‘ ‘ not in a technical sense, but in the sense with which common usage would ordinarily invest them”; and that the invasions of trust income, if any, are minimal and do not give the widow an absolute right of election.
(a) Taking first the matter of stock dividends, it is certainly a tenable position “in common usage ” as distinct from the definition of the Principal and Income Act, that stock dividends are principal, not income. In logic, of course, a stock dividend is not a dividend at all; it is rather a declaration by the company that the portion of the accumulated earnings represented by the stock dividends shall never be declared as a dividend but shall be permanently appropriated to capital. (Eisner v. Macomber, 252 U. S. 189, 211 cited in Matter of Fosdick, 4 N Y 2d 646, 653 [1958]; City Bank Farmers Trust Co. v. Ernst, 263 N. Y. 342, 346 [1934]; People ex rel. Clark v. Gilchrist, 243 N. Y. 173,182 [1926].) Again, Federal and State income tax rules — which are the most pervasive and important occasion in common usage for distinguishing between principal and income — do not treat stock dividends as income. (People ex rel. Clark v. Gilchrist, supra.) And the United States Supreme Court went so far as to say that for Federal income tax purposes they *952 could not constitutionally be deemed income. (Eisner v. Macomber, supra.)
At the time this will was executed, in 1959, the New York statute provided that unless otherwise provided in a will stock dividends should be principal and not income. (Personal Property Law, former § 17-a.) Not until 1965 was this rule changed to the present rule that stock dividends of 6% or less were income while stock dividends over 6% were principal. It seems rather harsh to require a man who draws his will in 1959, in accordance with the then prevailing New York law, to have to keep watching to see if the Legislature will make any changes in the definition of principal and income and to keep revising his will to keep up with those changes.
Discussing this precise point, the Temporary Commission on Estates said: ‘1 For example, assume a will was executed many years ago providing for a trust with income for life to the surviving spouse and further providing that all distributions in stock of the declaring corporation shall be principal and not income. That provision would be declaratory of the then statutory law. The new statute, however, makes such distributions of 6% or less payable to income. Since by the terms of the statute the will controls, is the spouse-income beneficiary receiving all of the income ? While there is no definitive answer yet to that question, the futility of having an absolute right of election depend on the changing and often arbitrary rules of income and principal is evident.” (Sixth Report of Temporary Comm. on Law of Estates [Report No. 1. 10.1A]; N. Y. Legis. Doc., 1967, No. 19, p. 76.)
(b) The remaining corporate distributions as to which the will provides that two thirds shall go to principal and one third to income are all of a type formerly governed by “ the highly complex ‘ apportionment ’ rule of In re Osborne, 1914, 209 N. Y. 450, 103 N. E. 723 — a constant source of irritation to institutional trustees in this state ”. (Hoffman, Practice Commentary, McKinney’s Cons. Laws of N. Y., Book 17B, EPTL 11-2.1, p. 129.)
To a large extent the provision of the Principal and Income Act relating to corporate distributions may be said to be an attempt to get away from the complexities qf the Osborne rule by prescribing fixed and perhaps arbitrary rules. This testator, not having the light of the Principal and Income Act which had not yet been enacted, attempted to avoid the complexities of the Osborne rule by setting forth the fixed two-thirds-one-third allocation rule of the will. Bearing in mind that the trust will be relatively small (about $50,000) and the unusual distributions *953 governed by the rule, rare and amounting to very little money, it would seem likely (even if there ever are such distributions to this trust) that the testator’s two-thirds-one-third rule will be more economical for everybody than the expense, lawyers’ work, research, etc., involved in an attempt to apply the Osborne rule to these small amounts.
The two-thirds-one-third rule stated by testator appears to be a fair one. It does not, for example, take items which are indisputably income and allocate them to principal. Thus, rights to subscribe are principal both at common law (Baker v. Thompson, 224 N. Y. 592 [1918]) and under EPTL 11-2.1 (subd. [e],.par. [4]). Yet, the will provides that only two thirds of such rights to subscribe shall be deemed principal and one third shall be deemed income. Again, liquidating dividends were formerly allocable between principal and income on the basis of the Osborne rule. (Matter of Schaefer, 155 Misc. 850 [Surrogate’s Ct., N. Y. County, 1935].) The Principal and Income Act provides that they shall be principal except to the extent that the corporation indicates that part of the distribution is a settlement of preferred or guaranteed dividends. (EPTL 11-2.1, subd. [e], par. [6].) The will, without the benefit of the as yet unenacted Principal and Income Act, divides such liquidating dividends on a two-thirds-one-third basis which would seem, in general, to be quite fair to income. Again, extraordinary cash dividends and dividends payable in stock of another corporation (which are assimilated to extraordinary cash dividends) (City Bank Farmers Trust Co. v. Ernst, 263 N. Y. 342, 346 [1984]) were formerly allocable between principal and income under the Osborne rule. The subsequently enacted Principal and Income Act provides that they shall be income. (EPTL 11-2.1, subd. [e], par. [9].) The will applies a two-thirds-one-third rule. On the whole it would appear that the two-thirds-one-third allocation rule of the will is a fair and workable rule.
The deviations between the rule set forth in the will and the rule in the Osborne case or the Principal and Income Act are so minor as not to amount to more than the ‘ ‘ minimal invasions of the trust income ” which “ do not give the surviving spouse an absolute right of election contrary to the intention of the decedent spouse.” (Matter of Brettschneider, 30 A D 2d 59, 60 [1st Dept., 1968], supra.) They do not derogate from the trust being one which provides income payable to the surviving spouse for life “ in the sense with which common usage would ordinarily invest ” these words.
*954 (e) The provision of the will authorizing the trustees to determine the manner in which administration expenses shall be apportioned as between corpus and income would seem to be the kind of administrative provision whose exercise is subject to regulation by the Surrogate and whose existence does not give rise to a right of election. (EPTL 5-1.1, subd. [a], par. [1], subpar. [H].) The express provision of the statute to this effect has been held not to be limited to the specific instances therein enumerated. (Third Report of Temporary Comm, on Law of Estates [Report No. 1. 10B]; N. Y. Legis. Doc., 1964, No. 19, pp. 196, 217, 218; Matter of Edwards, 2 Misc 2d 564, 567 [Surrogate’s Ct., N. Y. County, 1956], affd. 2 A D 2d 838 [1956], affd. 3 N Y 2d 739 [1957]; Matter of Bauer, 54 Misc 2d 1060, 1062 [Surrogate’s Ct., Nassau County, 1967].)
3. In my view the trust does provide for income to the surviving spouse in the sense of “ common usage ”. I have already indicated that I think that the differences between the directions in the will and the provisions of the Principal and Income Act do not give rise to an absolute right of election by the surviving spouse because the differences are, at most, ‘ ‘ minimal invasions of the trust income ”, if they are invasions at all. (Matter of Brettschneider, 30 A D 2d 59, 60, supra.) But further, I do not think the Principal and Income Act was intended to effect a change in the surviving spouse’s right of election. It was rather an effort to lay down rules for the division of distributions between principal and income where the will or trust instrument was ambiguous. Thus, the Principal and Income Act begins with the statement that: “ A trust shall be administered with due regard to the respective interests of income beneficiaries and remaindermen. A trust is so administered with respect to the allocation of receipts and expenditures if a receipt is credited or an expense is charged to income or to principal or partly to each (A) in accordance with the terms of the trust instrument, notwithstanding any contrary provisions in this section; (B) in the absence of any contrary terms of the trust instrument, in accordance with the provisions of this section”. (EPTL 11-2.1, suibd. [a], par. [1]. See, also, EPTL 11-2.1, subd. [b], par. [3].) Thus, it is only “in the absence of any contrary terms of the trust instrument” that the statute has any applicability.
Again, with respect to corporate distributions, the statute provides: “ Notwithstanding the provisions of this paragraph, a will, deed or other instrument which creates or declares a trust may provide with respect to all matters covered by this section, and direct the manner of ascertaining income and *955 principal and the apportionment thereof or grant discretion to the trustee or another person to do so, and such provision or direction, where otherwise not contrary to law, controls.” (EPTL 11-2.1, subd. [e], par. [1].)
As the statute directs the trustee to determine income and principal in accordance with the terms of the trust instrument or will, and that provisions of the will shall control over provisions of the statute, why should these provisions of the statute not be determinative as to what constitutes income or principal rather than the remaining provisions of the statute which tell the trustee how to determine it when the will or trust instrument is silent on this point? This, after all, is a case in which the will is not silent.
That the Principal and Income Act was not intended to effect a change in the surviving spouse’s right of election is further indicated by this consideration: Subdivision (m) of EPTL 11-2.1 provides: “ Except as specifically provided in the trust instrument, the will or in this section, this section shall apply to any receipt or expense received or incurred after its effective date by any trust, or decedent’s estate whether established before, on or after the effective date of this section and whether the asset involved was acquired by the trustee before, on or after its effective date.”
Thus, it would appear that the Principal and Income Act applies even to the income of a trust established under the will of a man who had died before the enactment of the Principal and Income Act and where the trust for the surviving spouse had already been established. But surely the surviving spouse’s right of election must be determined by the facts and law 'as they were at the time of the decedent’s death and not at some later date.
4. A number of cases — none of them in the Court of Appeals or in the Appellate Division for this Department — have taken the contrary view and have held that a surviving spouse has a right of election where a will directs an allocation of income which is less favorable to the surviving spouse than either the Osborne case or the Principal and Income Act (or its predecessors) would provide in the absence of provision in the will; e.g., Matter of Hyman (41 Misc 2d 939 [Surrogate’s Ct., Nassau County, 1964], affd. 24 A D 2d 70S [2d Dept., 1965]).
With regret I must say that I cannot agree with those cases. Some of these cases have remarked on the unfortunateness of this result. (Matter of Kune, 43 Misc 2d 387, 390 [Surrogate’s Ct., Westchester County, 1964], affd. 22 A D 2d 852 [2d Dept., 1964].) It has recently been questioned whether the Court of *956 Appeals agrees with this line of cases. Thus, the Temporary Commission on Estates in its last report, citing Matter of Baileson (16 N Y 2d 767 [1965]) said: “ It may well he that the Court of Appeals is not in accord with the philosophy behind the decisions ” which have allowed a right of election where the will did not accord with the Principal and Income Act. (Sixth Report of Temporary Comm. on Law of Estates [Report No. 1.10.1A]; N. Y. Legis. Doc., 1967, No. 19, p. 77.)
In any event, I think that the Appellate Division for this Department has refused to follow this line of cases. (See Matter of Brettschneider, 30 A D 2d 59, 60 [1st Dept., 1968], supra.)
5. I suppose that this interpretation does contain a danger of whittling down a surviving spouse’s rights by a will requiring the least generous of any available allocations of income. But I think the Surrogate has an additional power to insure against an even minimal whittling down of the widow’s right to income by well-meant provisions for allocation of principal and income such as are contained in this will. EPTL 5-1.1 (subd. [a], par. [1], subpar. [H]) states that the grant of authority in a will to a fiduciary to do certain enumerated things shall not give the surviving spouse an absolute right to take his elective share but the Surrogate’s Court may in its discretion direct and enforce for the protection of the surviving spouse an equitable distribution of assets and make such other directions as it may consider necessary for the protection of the surviving spouse. It appears to be well established that the application of this section is not limited to the particularly enumerated powers. “ The power of the Surrogate’s Court is not limited to those powers specifically enumerated in the afore-mentioned paragraph. The power of the Surrogate is one of general equitable supervision to assure both the testamentary scheme proposed by the decedent and the fair participation of the spouse ”. (Matter of Bauer, 54 Misc 2d 1060,1062 [Surrogate’s Ct., Nassau County, 1967]; Amend, The Surviving Spouse, etc., 33 Brooklyn L. Rev. 530; Third Report of Temporary Comm. on Law of Estates [Report No. 1.10B]; N. Y. Legis. Doc., 1964, No. 19, p. 217; Matter of Clark, 275 N. Y. 1, 5 [1937].)
In Matter of Bauer (54 Misc 2d 1060 [Surrogate’s Ct., Nassau County, 1967]) Surrogate Bennett applied this provision to a situation in which the will gave the trustee discretion as to whether to treat the stock and cash dividends, ordinary or extraordinary, as income or dividends. Applying the power under the statute, the court held that the widow, nevertheless, *957 did not have a right of election beyond the limited right to receive $2,500 principal.
However, the Surrogate in the Bauer case said that this result turned on the fact that the authority given to the trustee was discretionary and not mandatory, citing his earlier decision in Matter of Hyman (41 Misc 2d 939 [Surrogate’s Ct., Nassau County, 1964], affd. 24 A D 2d 703 [2d Dept., 1965]).
It is not clear to me that the statutory provision of EPTL 5-1.1 (subd. [a], par. [1], subpar. [H]) is limited only to discretionary authority and does not apply to a mandatory authority. The statute merely refers to the 1 ‘ grant of authority. ’ ’ At least one commentator interprets the Court of Appeals decisions as indicating that that court feels 11 that the reasoning of the lower court cases is not sound even in the mandatory powers cases.” (Amend, The Surviving Spouse and the Estates, Powers and Trusts Law, 33 Brooklyn L. Rev. 530, 545.)
In addition, however, the Surrogate has full equitable powers with respect to administration of decedents’ estates. With respect to the precise question of the widow’s right of election the Court of Appeals has said: “ The Surrogate has jurisdiction to direct an equitable distribution and valuation of the assets so as to insure to the widow her intestate share. ’ ’ (Matter of Clark, 275 N. Y. l, 5 [1937].) Long ago, the Court of Appeals said that: “In the exercise of the statutory powers, conferred upon him to direct and control the conduct and settle the accounts of administrators and executors, the surrogate is not fettered; nor is he prevented by any rule of law from doing exact justice to the parties. He is supposed to administer justice in each case within his jurisdiction, according as the equities of the case demand; within the confines only of statutory provisions.’'’ (Matter of Niles, 113 N. Y. 547, 556-557 [1889].)
In the exercise of this power, I shall direct that, in the determination of whether a particular corporate distribution is income or principal, the trustees shall adopt either the rule set forth in the will or the rule set forth in the Principal and Income Act, whichever is the more favorable to the income beneficiary.
I do not think that this is a prohibited “ re-writing ” of the will. The powers granted to the Surrogate under EPTL 5-1.1 (subd. [a], par. [1], subpar. [H]) are explicitly given to him “notwithstanding the terms of the will.” In addition, even absent such a direction as I have indicated, I think that this will does provide for a trust with income payable to the widow *958 for life within the meaning of the statutes with respect to the right of election. The direction I now make is to make doubly sure that there shall not be even a minimal whittling down of the widow’s right to income.
Accordingly, I hold that the widow is not entitled to a general right of election, but only to the limited right of election referred to in “ I ” above, and the decree shall contain the direction to the trustees with respect to allocation of income to which I have just referred.