Nathan B. Sobel, S.
Although Mr. Plimack died in 1971, his will admitted to probate was executed in 1942. As a consequence, in making provision for his wife by trust for life rather than by outright disposition, Mr. Plimack (or his draftsman) did not have the benefit of the many court decisions and statutory amendments since 1942 governing the right of election. The widow raises issues that her elective share trust is “ inadequate ”, “illusory” and “potentially destructive” — all terms discussed, infra. These are contentions rarely made with respect to elective share trusts in current wills. The decisions and the new statutes have made the rights of the surviving spouse explicit.
Mr. Plimack (or his draftsman), to satisfy Mrs. Plimack’s elective share, created multiple (two) trusts, each a split income trust. Too often this technique of draftsmanship is a serious mistake from the viewpoint of both the right of election and marital deduction statutes. (The latter problem is not here involved.)
Mrs. Plimack’s elective share is one half of the net estate, there being no children. (EPTL 5-1.1, subd. [a], par. [1], cl. [A].) The will makes an absolute disposition to the widow of $7,500 and creates two split income trusts for her benefit. In the paragraph *478 “ Sixth ” trust, Mr. Plimack directs his trustees “ to distribute the net income therefrom — one-half to my beloved wife Gertrude Plimack and one-half to my beloved mother Jeanette Plimack ”. The paragraph “Seventh” trust is identical except that the income is split one half each to Mrs. Plimack and testator’s father, Harry. The father predeceased. Under other provisions of the paragraph, the mother is substituted. We thus have at date of death two trusts from each of which the widow is entitled to one half the income and the mother the other half.
We discuss in general terms the contentions of the widow.
A disposition of trust income to a spouse in satisfaction of the minimum elective share is never the equivalent of such an outright disposition. Many States do not permit it. (See, e.g., Matter of Clark, 21 N Y 2d 478.) The circumstances which induced the Foley Commission to recommend and the Legislature to adopt such a provision are stated in part in the following excerpt from its 1928 report: “It does not seem to the Commission to be desirable that the right to take the intestate share should be given to the surviving spouse in every estate, regardless of its amount. But while immediate necessities should be provided, there should be some limitation by way of permitting the income ^pon the balance of the intestate share to be paid over during the life of the surviving spouse. Therefore, in the larger estates the Commission proposes to preserve to the testator a right to create a trust, with income payable to the wife, upon a principal equal to or greater than her intestate share. In such cases, the widow will not be permitted to defeat her adequate testamentary benefits by any right of election.” (Legis. Doc. ■1928, Ho. 70.)
The commission recommended $25,000 for ‘‘ immediate necessities. ” The statute as enacted (Decedent Estate Law, § 18, now EPTL 5-1.1) required an outright disposition for “ immediate necessities ” of at least $2,500 {now $10,000 in wills executed after Aug. 31, 1966), The balance of no less than the minimum intestate share (now “elective share”) minus the outright disposition, could be left in trust for the surviving spouse ‘ for life”.
Many testators have taken advantage of the provisions of the statute authorizing income for life rather than outright disposition of the spouse’s elective share. As the course of decisions establishes, often too great an advantage!
The courts and the Legislature have dealt with basically three problems created by dispositions of income in trust: (1) those in which the dispositions in trust are “ inadequate ”, i.e., less in amount than the elective share; (2) those in which the disposition *479 is adequate but made “ illusory ” because of authority given to the trustees to allocate unproductive assets etc. to the trust of the surviving spouse; and (3) those in which provisions ih the will are “potentially destructive ” of the spouse’s right of election because of power to invade either principal or income for the benefit of others than the surviving spouse or to limit such income for duration less than “for life.”
I
The provisions for Mrs. Plimack are “ adequate ” to meet the requirements of the statute. (EPTL 5-1.1, subd. [a].) As noted she receives a general disposition of $7,500. The total of all such effective dispositions to others is $4,500. She receives one half the income from each of the two residuary trusts. One half the income from two trusts is the equivalent of one half the income of a single trust. (Cf. Matter of Bevan, 185 Misc. 192.)
The direction in the will that the executors shall pay all estate taxes out of the residuary, which consists of the two trusts, does not make the trust dispositions inadequate. True, the pre-residuary general dispositions ($7,500 to the widow, $4,500 to others) are relieved of tax liability. By imposing all tax liability on the residuary, the widow is not required to pay more than her fair share of the taxes (Matter of Jacobsen, 61 Misc 2d 317, affd. 33 AD 2d 760).
Nor does the failure of the testator to take advantage of the estate tax marital deduction give the widow a right of election. True, if she received her intestate share, or her elective share outright, or her trust in marital deduction formula, her disposition would be free of estate taxes and therefore somewhat larger. But this is not what the right of election statute requires. (Matter of Ruppert, 1 Mise 2d 1072, affd. 2 A D 2d 958, affd. 3 N T 2d 731; Matter of Edwards, 2 Misc 2d 564, affd. 2 A D 2d 838, affd. 3 N T 2d 739.) The net estate is computed without reference to estate taxes, but when the widow’s share is in law taxable she is required to pay her proportionate share. (EPTL 5-1.1, subd. [a], par. [1], cl. [A].) It is conceivable that a direction in the will against apportionment may under some circumstances render the trust disposition to the widow “ inadequate ” to satisfy her elective share but this is not such a case.
The contention that the gift of $5,000 made by testator shortly before his death to his mother affects the ‘ ‘ adequacy ’ ’ of her intestate share is rejected. If it is an effective gift inter vivos or causa mortis (pre-September 1, 1966 will) it does not enter into the computation of the net estate. If it is not an effective gift it will simply increase the principal of the two residuary *480 trusts. In terms of satisfying the statute, Mrs. Plimack has received her fully “adequate” elective share. (EPTL 5-1.1, subd. [a], par. [1], cl. [D]; Matter of Hirst, 308 N. Y. 875; Matter of Becker, 50 Misc 2d 308; Matter of Roland, 40 Misc 2d 1018; Matter of Mayers, 184 Misc. 413, affd. 269 App. Div. 1027.)
n
Since the stock of Industrial Studio, Inc., is no longer an estate asset, having adeemed, there are no powers given to the trustees which can make the trusts for the widow “illusory.” As a practical matter, even if the stock had not adeemed, the shares would have to be allocated to one or the other residuary trusts of both of which the widow is the one-half income beneficiary. There is simply no distribution, allocation or valuation of the assets by the trustees which can prejudice the widow’s right to income. These trusts simply cannot become -“illusory”. (Matter of Edwards, 2 Misc 2d 564, affd. 2 A D 2d 838, affd. 3 N Y 2d 739, supra.)
It is only briefly mentioned therefore, that in -order to deal with powers of trustees which can make the trust for the surviving spouse “illusory,” the Legislature in 1936 (eh. 234, adding Decedent Estate Law, § 18, subd. [1], par. [h]) provided that the grant to the fiduciaries of specified powers (listing nine) shall not give the surviving spouse an absolute right to an elective share; but the Surrogate may, notwithstanding such authority in the will, direct an equitable distribution allocation, or valuation of the assets, etc. This provision with slight modification is now EPTL 5-1.1 (subd. [a], par. [1], cl. [H]), applicable to wills executed prior to September 1,1966. The courts have held that the equitable powers of the Surrogate extend beyond the nine specified powers in the statute. (Matter of Shupack, 1 A D 2d 841, mod. on other grounds 1 N Y 2d 482; Matter of Edwards, supra; Matter of Niedelman, 6 A D 2d 291, affd. 5 N Y 2d 1043; Matter of Clark, 275 N. Y. 1; Matter of Jacobson, 61 Misc 2d 317, affd. 33 A D 2d 760, supra; Matter of Jaffer, 58 Misc 2d 948; Matter of Lowen, 58 Misc 2d 190; Matter of Bauer, 54 Misc 2d 1060, 55 Misc 2d 808; Matter of Roland, 40 Misc 2d 1018, supra; Matter of Sernau, 36 Misc 2d 348; Matter of Greene, 34 Misc 2d 630, affd. 14 AD 2d544.)
But the courts have also held that such supervisory powers of the Surrogates do not extend to varying or modifying the terms of a disposition which is ‘ potentially destructive ” so as to bring the disposition within the provisions of the right of election statute. (Matter of Hyman, 41 Misc 2d 939, 942 and *481 cases cited; Matter of Uhlfelder, 29 Misc 2d 40, affd. 16 A D 2d 624, affd. 12 N Y 2d 965; Matter of Greene, supra; Matter of Durand, 250 N. Y. 45, 54.)
With respect to the supervisory powers of the Surrogate over dispositions in trust for the surviving spouse in wills executed after August 31, 1966, the Legislature has extended such supervisory powers of the courts to a wide range of further powers. (See Prof. Hoffman’s Practice Commentary, McKinney’s Cons. Laws of N. Y., Book 17B, EPTL 5-1.1, pp. 567-568.) ■
But, very relevant to the instant case, the courts have invariably held that the supervisory powers of the court cannot extend to make “ adequate ” a disposition in trust which is inadequate. Nor can the Surrogate extend, vary or modify the terms of a disposition which is “ potentially destructive ” so as to bring that disposition into conformity with the statutory right of election.
The contention of the executors that the particular disposition next discussed may be modified under the supervisory powers of this court is rejected.
HI
The widow’s main contention is that the power of invasion of principal given to the trustees under the will is potentially destructive and in consequence gives to her the absolute power to take her intestate share outright.
Upon the recommendation of the Bennett Commission on Estates, the Legislature did in 1965 codify those provisions in dispositions in trust to a surviving spouse which are “ potentially destructive ” (L. 1965, ch. 665, § 6).
The statute (Decedent Estate Law, § 18-b, subd. 1, par. [j]; now EPTL 5-1.1, subd. [c], par. [1], cl. [J]), while in terms applicable only to such provisions in wills executed after August 31, 1966, is declaratory of prior decisional law on the subject. It is in practical terms applicable to all wills whenever executed which make provision for elective share trusts.
As expressly noted in the commission’s reports, clause (J) was purposed to codify existing decisions and thus make visible to the Bar those provisions which, if included in a disposition in trust to a surviving spouse, would give rise to an absolute right of election. (Bennett Comm, on Estates [Sixth Report, 1967], p. 73.)
The cases term such provisions as “ potentially destructive ” (although the statute does not use such a term) because the mere existence of such power in the trustee, whether exercised or not, can deprive the spouse of the “ adequate ” elective share.
*482 The statute and the decisions in effect provide that the surviving spouse is entitled to take the elective share outright if any one (singly or in combination) of the following provisions are contained in the disposition. As noted, we are concerned in Mr. Plimack’s will with only one of those conditions. The others are briefly mentioned with citations of decisions codified by the statute.
(1) A provision which terminates the trust prior to the death of the surviving spouse (e.g., upon remarriage) gives rise to an absolute right to take the intestate share outright. Such a provision is potentially destructive of the spouse’s rights since entitled to a trust ‘ ‘ for life. ’ ’ (Matter of Byrnes, 260 N. Y. 465; Matter of Rosensweig, 19 N Y 2d 92; Matter of Bleier, 20 Misc 2d 322; cf. Matter of Greene, 34 Misc 2d 630, affd. 14 A D 2d 544, supra.) A trust for life of the spouse may be terminated before death provided the entire principal then vests in the spouse. (Matter of Niedelman, 6 A D 2d 291, affd. 5 N Y 2d 1043, supra.)
(2) A provision of the otherwise adequate trust disposition which authorizes the fiduciary to pay or apply less than substantially all the income to the surviving spouse; or which authorizes the invasion or diversion of income from the spouse for the benefit of another, will give the surviving spouse an absohlte right to take the elective share. (Matter of Schmidt, 171 Misc. 95, affd. 257 App. Div. 827, affd. 282 N. Y. 787; Matter of Kune, 43 Misc 2d 387, affd. 22 A D 2d 852; Matter of Aaronson, 20 A D 2d 133,138; Matter of Withall, 274 App. Div. 846; Matter of Sheppard, 189 Misc. 367; Matter of Bommer, 159 Misc. 511; Matter of Friedman, 67 Misc 2d 304; Matter of Sernau, 36 Misc 2d 348, supra; Matter of Friedman, 22 Misc 2d 654; Matter of Bleier, 20 Misc 2d 322, supra.)
Such a provision is ‘ ‘ potentially destructive ’ ’ since it affects the statutory right to ‘ ‘ all the income ’ ’ from the trust.
A provision which authorizes invasion or diversion of income for the benefit of the surviving spouse exclusively does not give rise to a right of election. • (Matter of Best, 62 Misc 2d 535; Matter of Lowen, 58 Misc 2d 190, supra.)
A minimal invasion of income does not give the spouse “ less than substantially all of the net income.” (Matter of Baileson, 16 N Y 2d 757; Matter of Brettschneider, 30 A D 2d 59 and cases cited.) What is a minimal invasion depends of course on the corpus of the trust and its productivity of income.
(3) A provision of the otherwise adequate trust, which authorizes the fiduciary to invade the principal of the trust for *483 the benefit of “ another person ”, gives the surviving spouse an absolute right of election. (Matter of Wittner, 301 N. Y. 461; Matter of Matthews, 255 App. Div. 80, affd. 279 N. Y. 732; Matter of Aaronson, 20 A D 2d 133, 136; Matter of Murray, 27 Misc 2d 115, mod. on other grounds 18 A D 2d 795; Matter of Friedman, 22 Mise 2d 654, supra; Matter of Lunney, 21 Misc 2d 455; Matter of Bleier, 20 Misc 2d 322, supra; Matter of Friedman, 67 Misc 2d 304, supra; Matter of Sheppard, 189 Misc. 367, supra.) Such provisions are potentially destructive since, if exercised, the spouse may be deprived of an adequate elective share.
The cases cited reveal that most frequently the mistake is made of authorizing invasion for both beneficiaries of a split income trust; though occasionally by cross invasion for the income beneficiaries or remaindermen of multiple trusts. As noted earlier, the use of both kinds of trusts should be avoided in creating elective share trusts if it is desired to authorize invasion. In every event where there is an authorization to invade principal for the benefit of any person other than the surviving spouse, the spouse may elect absolutely to take the intestate share outright.
No case discusses the question whether an invasion which cannot reduce the principal below the elective share is potentially destructive — e.g., where instead of one third, the entire net estate is placed in trust for the widow and the authorization for invasion cannot reduce the principal below the one-third elective share. Such an invasion may not be potentially destructive but under the express terms of the statute (EPTL 5-1.1, subd. [c], par. [1], cl. [J], subcl. [i]) at least the widow could elect to take outright but as the statute puts it “in no case to exceed such spouse’s elective share ”. The exercise by any spouse of a right of election to take an elective share outright constitutes a surrender of all rights under the will. (Matter of Rosensweig, 19 N Y 2d 92, 97.) This includes all general and specific dispositions as well as all dispositions in trust.
Mrs. Plimack contends that the will in issue contains an invasion provision which is potentially destructive because it provides for invasion of the principal of her trusts for the benefit of another person. Both trusts contain identical invasion provisions except for the names of the other split income beneficiaries. We quote from the paragraph “ Seventh ” because of a separate contention by the executors with respect to that trust. “ I further authorize and empower my Trustees hereafter named to appropriate from the principal of the Trust herein created for the benefit of my beloved wife, Gertrude Plimack, and my *484 beloved father, Harry Plimack, such sum or sums from time to time, as they, in their absolute and uncontrolled judgment and discretion shall deem necessary to meet the cost of illness or any other emergency affecting either of the beneficiaries herein, provided, however, that they shall not use more than the sum of $1,000 out of the corpus of said Trust Fund in any one year for said purposes for either of the beneficiaries herein, nor in any event more than one-half of the Trust Fund created herein for the benefit of either of the said beneficiaries.”
Because of this quoted invasion provision, Mrs. Plimack has duly filed a notice of election to take her intestate share absolutely. The executors have brought this proceeding under SOPA 1421 requesting a determination of the validity and effect of her election.
Unless several contentions of the executors can be sustained, Mrs. Plimack is correct in her contention that the trust provisions contain a power to invade principal for another person, i.e., other than the surviving spouse. (See Matter of Wittner, 301 N. Y. 461, supra; Matter of Aaronson, 20 A D 2d 133, supra; Matter of Friedman, 22 Mise 2d 654, supra; Matter of Lunney, 21 Misc 2d 455, supra.) We consider however the executors’ contentions.
(a) The executors contend that the provision in issue authorizes “ segregation ” of the principal within each trust so that in practical effect the trustees will be administering four trusts in solido. Thus, an invasion for the benefit of the mother in either trust will result in a reduction of her share only of the principal but not that of the spouse. They find such authorization in the last sentence of the disposition which authorizes invasion of not more than $1,000 a year ‘ ‘ for either of the beneficiaries herein, nor in any event more than one-half of the Trust Fund created herein for the benefit of either of -the said beneficiaries. ”
A “ segregation ” contention has been considered in several cases. It is interesting to observe that no case has been reported which sustained a ‘ ‘ segregation ’ ’ contention where the trust for the spouse was, as it is here, a split income trust. (See Matter of Aaronson, 20 A D 2d 133, 136, supra; Matter of Lunney, 21 Misc 2d 455, supra; Matter of Murray, 27 Misc 2d 115, supra, mod. on other grounds 18 A D. 2d 795.) In Matter of Wittner (301 N. Y. 461) such a contention was rejected in a multiple trust situation. The only cases in which the contention has been accepted involved multiple trusts. (Matter of Liberman, 4 A D 2d 512, affd. 5 N Y 2d 719; Matter of Tonetti, 53 Misc 2d *485 501 [marital deduction at issue]; Matter of Sernau, 36 Misc 2d 348, supra.)
In Matter of Aaronson (supra) the Surrogate had sustained a segregation contention (38 Misc 2d 426). The Second Department reversed, finding no indicia of a segregation intention in the provision in issue. (20 A D 2d 133.)
Mr. Plimack had no such intention in this case. The direction in issue provided that each of the trusts could be invaded to the extent of $1,000 a year for either the wife or the mother (substituted for the father in the paragraph “ Seventh ” trust). Such an invasion for the mother during the lifetime of both waa, potentially destructive of the widow’s right to income from her full share of the trusts. True, no invasions could be permitted for the mother alone which would exceed one half of the principal. Such a provision may benefit the remaindermen, but is no protection to the widow. The law regards an invasion of principal as potentially destructive precisely because it reduces present income and also potential income resulting from increase in value of principal. If the principal of a $50,000 trust for the life benefit of A and B were reduced by annual payments of principal of $1,000 a year for B, it would reduce A’s income proportionately each year. It does not benefit A at all to restrict total principal payments to B to $25,000.
There is simply no indicia in the will to establish an intention by the testator to treat each trust as segregated trusts for the purpose of invasion.
(b) The executors contend that, in the paragraph “ Seventh ” trust, invasion is permitted only for the father: and, since he predeceased, that no invasion is permitted for the substituted income beneficiary, the mother. The invasion clause, heretofore set out in full, designates the wife and father by name and authorizes invasion for “ either of the beneficiaries.” Another earlier clause in the same article (cl. 2[b]) substitutes the mother by name shpuld the father predecease. The executors are requesting this court to find that testator intended that only the paragraph “ Sixth ” trust could be invaded for the mother; that, should her one half in that trust be exhausted, no further invasion could be permitted for her benefit from the paragraph “ Seventh ” trust no matter how dire her circumstances. Presented with such an issue, this court would find no .such limitation in the language of the clause nor discern any such intention on ■the part of the testator, Mr. Plimack.
(c) The executors contend that an invasion of principal to the extent of only $1,000 a year for the now aged mother, would be “ minimal ”’.
*486 It has been heretofore noted that “minimal” invasions of income have been tolerated by the courts even prior to the amendment in 1967 which added the word “ substantially ” to subclause (iii) of clause (J), viz., granting the spouse an absolute right of election if paid “ less than substantially all of the net income ” (emphasis supplied). Before and after the amendment the requirement has been sparingly applied. (Matter of Baileson, 16 N Y 2d 757, supra, Matter of Brettschneider, 30 A D 2d 59, supra.)
No court has however as yet held that minimal invasion of principal is permitted. In this regard it is perhaps of some significance that the Bennett Commission on Estates (Sixth Report [1967], p. 73) recommended “ Thus, much litigation would be avoided, if rather than granting the widow a general right of election, the court were empowered * * * to enjoin the exercise of a power to invade the trust for another person.” The bills introduced to effectuate that recommendation were not passed. (See Senate Int. 3774; Assembly Int. 5362, Print A. 5648.)
"What is minimal? In this case, the principal of both trusts together would be $100,000. The widow under the terms of the will would be entitled to the income on $50,000 a year. An invasion of $1,000 each year for the elderly mother would potentially decrease the widow’s annual income from principal of $500 in each such year. This is not much, but neither is the income from one half the principal of both these small trusts.
In the absence of some such determinations from higher courts,' this court holds that it may not disregard even minimal invasions of principal in an “ elective share ’’trust.
We hold that the power given by Mr. Plimack to the trustees to invade the principal of both trusts for the benefit of the mother, is potentially destructive of Mrs. Plimack’s rights and that she is entitled to receive outright her intestate share of the net estate. The amount will be determined on the accounting.