Nathan B. Sobel, S.
Petitioner Irving Trust Company, as coexecutor and sole trustee under the will of Ella M. Stalp, requests construction and direction as to the administration of a trust to be set up under article thirty second of her will.
Testatrix executed her will on November 2, 1972. She died on October 4, 1973. These dates are significant for the later discussion of the statutory and administrative transitional provisions of the 1969 Tax Beform Act (TEA) (83 U. S. Stat. 487 et seq.).
She left an estate totaling some $675,000. All but $87,000 of her dispositions are to recognized and qualified charitable beneficiaries. The major part of her charitable dispositions in both her preresiduary dispositions and in her residuary dispositions is given outright. These comparative amounts — charitable vs. private — are mentioned to leave no doubt of Mrs. Stalp’s general charitable purpose and dispel any tax minimization motive on her part.
The first such outright preresiduary charitable disposition ($10,000) is given to Caledonian Hospital. Because of her special interest, she also desired to make a more substantial disposition to that hospital of half her residuary estate in trust.
Miss Stalp had an aunt Henrietta E. Bailey (age 80 at date of execution of the will) to whom she wished to continue to make her customary contribution of $100 per month. Her will draftsman instead of providing for the purchase of such a modest annuity at a cost of approximately $10,000; or better still creating a qualifying charitable remainder annuity trust (Internal Bevenue Code [of 1954] [U. S. Code, tit. 26, § 2055, subd. [e], par. [2], cl. [A] ]) combined Aunt Henrietta’s small annuity with the trust for Caledonian Hospital as follows:
*414 THIRTY SECOND
“ (a) One-half (%) thereof [residuary] I give devise and bequeath to my trustee, in trust, nevertheless * * * to pay over the income therefrom during the term of the natural life of my aunt, Henrietta E. Bailey * * * as follows: (1) One hundred dollars per month to my said aunt, Henrietta E. Bailey; (2) The balance of said income to Caledonian Hospital of the City of Hew York.” The same article disposed of the remainder to Caledonian Hospital on Aunt Henrietta’s death with the request that a wing, clinic or department of the hospital bear the name of the Stalp Family. The corpus of this hospital trust is in excess of $200,000. The remaining half of her residuary estate (also $200,000) is given outright to 10 charities.
The trust provisions as drafted by Miss Stalp’s attorney conformed in every detail with the old style charitable remainder trusts. The charitable interest in income was readily severable from the noncharitable interest and the value of the charitable remainder was presently ascertainable and therefore deductible.
In 1972 lawyers were under-informed of the TRA post-1969 requirements for deductible charitable remainder trusts. The Treasury experts were experiencing considerable difficulty in drafting regulations. Few lawyers indeed were capable of drafting a qualifying-charitable trust in conformity to the complex substantive provisions of the act and the administrative provisions of the proposed regulations. It would be pure coincidence if any trust drafted with full knowledge of the statute but prior to the final regulations would qualify under the definitions. As will be discussed infra, Congress, in recognition of the problem, had then and now before it a dozen bills which would permit courts to judicially reform post-1969 “ old style ” trusts to conform with the new TRA requirements.
The trust at issue has not been set up. The petitioner as coexecutor, preparatory to an account, requests construction and direction with respect to the article thirty second trust. Implicit in the petition is the concern that this hybrid split interest trust — part private income annuity and part charitable income — may contravene the requirements of the TRA.
The TRA is generally effective as to decedents dying after December 31, 1969. An estate tax deduction for a charitable remainder trust is allowed only if the trust is either a charitable remainder annuity trust or a charitable remainder unitrust (Internal Revenue Code [of 1954] [TJ. S. Code, tit. 26, § 2055, subd. [e], par. [2], cl. [B]]). By definition, contained among the income tax (not the estate tax) provisions of the code, a *415 charitable remainder annuity trust is one from which a sum certain (which is not less than 5% of the initial corpus placed in trust) is paid out to a noncharitable (private) income recipient at least annually (Internal Revenue Code [of 1954] [U. S. Code, tit. 26, § 664, subd. [d], par. [1], cl. [A]]).
Miss Stalp’s trust complies in all but one respect. While Aunt Henrietta is to be paid a “ sum certain ” ($100 a month) that sum is less than 5% of the initial value of the corpus ($200,000). The “ not less than 5 percent ” minimum is an income tax provision purposed to correct long standing abuses by donor creator’s of inter vivos charitable remainder trusts. These abuses (gifts of “ bargain sale ” property, “ capital gain ” property, section 306 stock) do not exist at all insofar as concerns testamentary charitable remainder trusts. A testator — unlike a donor-creator of an inter vivos trust (Internal Revenue Code [of 1954] [TI. S. Code, tit. 26, § 170, subds. [1], [2] par. [A] ]) — receives no income tax benefit from a gift to charity. Furthermore, the charitable interests not the private interests — were the intended beneficiaries of the new TRA provisions. (H. Rep. 91-413 [Part I] and S. Rep. 91-552 [91st Cong.].) It is therefore anomalous that an annuity income interest of 5% or more to a private income beneficiary results in a substantial charitable deduction but one which yields the same private annuitant 4% (or as in the instant case 1%) results in no charitable deduction at all. The provision intended to benefit the charitable remainderman benefits only the private annuitant at the expense of the charitable remainderman. This has been the experience in the courts under the TRA. The legislative history of the TRA does not provide any clear explanation why the 5% rule is applied to testamentary trusts. (See Report “ Charitable Remainder Trusts under the Tax Reform Act,” Amer. Bar Assn., Real Property, Probate & Trust J., Fall 1971, p. 384; Thomsen, “ Split Interest Gifts to Charity,” Amer. Bar Assn. Real Property Probate & Trust J., Fall 1972, p. 552.) The 5% rule seems to stem from a desire to prevent a trust from accumulating excess income tax free for the charity. Miss Stalp’s trust however requires excess income to be paid annually to the charity as permitted by the regulations.
This is not a true construction issue, but as our cases distinguish, really a question of interpretation. Interpretation is an investigation of what testatrix actually intended.
As previously observed, the entire will leaves no question as to Miss Stalp’s paramount intention. Specifically, in addition to the preresiduary bequest, she intended to give to Cale *416 donian Hospital one half of her residuary estate in trust with all the income and all the principal for the specified purposes. She did not intend that any noncharitable (private.) interest should share in the income. The kind of trust she intgnded to create would he entitled to the charitable deduction before and under the 1969 TEA.
A ‘ ‘ mistake ’ ’ in draftsmanship, i.e., annexing to a deductible charitable trust a minimal private annuity interest may under the TEA cause the loss to this estate of the charitable deduction for the entire charitable remainder interest. In dollars, such loss would be approximately $80,000. Since there is in the will a “ burden on the residuary ” clause, such loss would result in reducing the gift to Caledonian Hospital by $40,000 and reducing the 10 outright charitable gifts to the . other residuary charities by $40,000. (See Matter of Olson, 77 Misc 2d 515.)
It requires no extended discussion of local (New York) law to establish that our public policy favors charitable giving. (Matter of Neher, 279 N. Y. 370; Matter of Merritt, 254 App. Div. 292.) And Federal tax law disfavors denial of charitable deductions on technical grounds. (Lederer v. Stockton, 260 U. S. 3, 8.) Tax laws which are purposed to create incentives for charitable giving, may not be narrowly construed since they are “ liberalizations of the law in the taxpayer’s favor * * * begotten from motives of public policy ” (Helvering v. Bliss, 293 U. S. 144, 151).
Courts may rescue trusts which because of “ mistake ” run afoul of technical requirements of the law. As noted by Professor Scott: “It is immaterial that the beneficiaries of the1 trust did not induce the mistake or know of it or share it. It is-immaterial whether the mistake was a mistake of fact or a mistake of law.” (4 Scott, Trusts [3d ed.], § 333.4.)
As Professor Scott discusses, the “ mistake ” may be a mistake as to the tax consequences resulting from the method of creation of the trust. (See, e.g., United States Trust Co. of N. Y. v. Preston, 264 App. Div. 152; Preston v. United States Trust Co. of N. Y., 394 F. 2d 456, 459; Flitcroft v. Commissioner of Internal Revenue, 328 F. 2d 449; cf. Van Den Wymelenberg v. United States, 397 F. 2d 443, 445 [reformation denied because the purpose of the trust had been completed].) A “ mistake ” of the nature discussed will justify either rescission or reformation.
This court finds that Miss Stalp’s honest and straightforward charitable motive — one devoid of any purpose of tax avoid *417 anee — has been frustrated by an unintended “ mistake ” in will draftsmanship, justifying the court in allowing reformation of article thirty-second of her will by minor judicial surgery as hereinafter directed.
Entirely apart from the doctrine of “ mistake ” applicable in many areas of contract law as well as to testamentary dispositions, there has long been recognized in this State the doctrine of ‘ ‘ segregation ’ ’ peculiarly applicable to trusts. It permits “ segregation ” of the corpus of a single trust into divisible parts where there are more than one separable income interests. It has been applied to permit invasion for the. benefit of ‘ * creditors ” of excess income of one of multiple income beneficiaries. It has been most frequently applied to prevent, contrary to testator’s intention, disqualification of an elective share trust or a marital deduction trust. (Matter of Tonetti, 53 Misc 2d 501 and cases cited.)
The ‘ ‘ segregation ’ ’ doctrine is rarely applied to a split income trust (see Matter of Plimack, 72 Misc 2d 476, 484-485 and cases cited). It is particularly suited however for a hybrid split-interest trust — one in which one of the income beneficiaries receives an annuity and the other only income, as in the instant case.
Since applied, when to do otherwise would frustrate testator’s intention to give to a surviving spouse a marital deduction trust by segregating an interest which would make the spouse’s disposition terminable (Matter of Tonetti, supra), it may logically be applied to segregate from an otherwise qualifying charitable deduction trust, a private annuity interest which- disqualifies the charitable deduction.
Under the doctrine permitting reformation because of “ mistake ” and as well under the “ segregation ” doctrine, the court authorizes the executors to purchase out of the one-half residuary disposed of by article thirty second of Ella M. Stalp’s will a single payment [preferably ‘1 no refund ’ ’] annuity which will yield to Henrietta E. Bailey the sum of $100 a month commencing at date of testatrix’s death. The balance of the one-half residuary shall be set up, as intended by Miss Stalp, as a trust with all income payable to Caledonian Hospital with corpus payable to the hospital upon the death of Aunt Henrietta. Such a trust, irrespective of when created, is entitled to the charitable deduction since not a split-interest trust but one exclusively for charitable purposes.
In the alternative, the- executors may wish to segregate from the total fund, a sufficient sum to set up a qualifying charitable *418 remainder annuity trust (Internal Revenue Code [of 1954] [U. S. Code, tit. 26, § 2055, subd. [e], par. [2], cl. [A]) in conformity with the administrative regulations. In the latter regard, attention is directed to the provisions of the regulations (Code of Fed. Reg., tit. 26, § 1-664-1, subd. Eg]) which relax certain administrative requirements for charitable remainder trusts in wills executed on or before December 31, 1972 if testator dies before December 31, 1975 — a regulation which is applicable to Miss Stalp’s will.
Attention of the executors is also directed to H. R. 12035 recently reported out of Senate Finance with Treasury approval. Entirely apart from local (New York) law, permitting judicial amendment of trust provisions, the TRA has since enactment in 1969 contained statutory transitory provisions and authorization for administrative transitory provisions.
■The statutory transitory provisions merely exempt from the provisions of the TRA old-style charitable trusts created by wills executed before October 10,1969 if the decedent died before October 10, 1972 without changing his will. Other provisions not applicable here exempt such old-style trusts irrespective of the date of death. (Tax Reform Act of 1969, 83 TJ. S. Stat. 487, § 201, subd. [g], par. [4], cl. [B], subcls. [i], [ii], <[iii].) Miss Stalp’s will was executed November 2,1972. The statutory provisions are not applicable to this trust.
The administrative regulations do not exempt old-style trusts but permit judicial amendment or reformation of such trusts in a State court proceeding. (Code of Fed. Reg., tit. 26, § 1.664-1, subd. [f].) The regulation was made applicable to all wills executed after October 9, 1969. It was the result of recognition that the TRA had created enormous tax problems for the uninformed or under-advised testator. Under the administrative regulations, old-style remainders could be amended “ for all purposes ” to conform to TRA requirements as though the provisions had been properly drafted in the first place. The last effective date of these transitional provisions have been extended from time to time. At the present time (see Technical Information Release 1085, June 11, 1971) the last date for commencement of a judicial proceeding is December 31, 1972. Congress however has never been satisfied that sufficient time has been afforded taxpayers to comply. H.R. 12035 (as well as a dozen other pending bills) will extend the last date to commence a judicial reformation proceeding to December 31, 1975. Great leeway is extended to the courts in performing every kind of judicial surgery, the only requirement being that the decree is *419 binding on all parties. Indeed, H.B. 12035 goes far beyond the transitional regulations in affording relief. For those taxpayers who before enactment of H.B. 12035 may have paid the tax, a timely claim for refund (45 months [9 months period after death for filing the return plus three-year period of limitations]) is available.
In the light of local law, as discussed earlier in this decision, and without regard to present or future transitional provisions, this court is satisfied that the Treasury will accept the ruling of this court directing minor reformation of the trust in issue. The section 664 regulations do not require a ruling of the State’s highest court in such circumstances. (See, generally, Bevenue Procedure 72-2, superseded by Bevenue Procedure 73-8; cf. Commissioner v. Estate of Basch, 387 U. S. 456.)